## AMES *v.* MOIR.

ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 1404. Submitted January 12, 1891. — Decided February 2, 1891.

"Fraud" in the act of Congress, defining the debts from which a bankrupt is not relieved by a discharge in bankruptcy, means positive fraud, or fraud in fact, involving moral turpitude or intentional wrong: citing and affirming previous decisions to the same point.

A. purchased a lot of high-wines, to be delivered to him upon call, between certain dates, and to be paid for on each delivery at a named price per gallon. He made the call at a time when he knew himself to be insolvent, and with the intent to get possession of the wines and convert them to his own use without paying for them. They were delivered at his place of business pursuant to the call, and he shipped part and attempted to ship the balance, without paying for them; *Held*, that, within the meaning of the statute, the debt, in respect of the wines, was not created until the wines were delivered at his place of business under the call, or, at least, until he took possession of them without paying for them, and with the intent not to pay for them.

THE case, as stated by the court, was as follows:

Wilson Ames, the plaintiff in error, a rectifier and wholesale dealer in whiskies and high-wines in the city of Chicago,

executed and delivered to Robert Moir & Co., distillers and merchants at Oquawka, Illinois, the following writing, bearing date June 9, 1870 : " I have this day bought of Robert Moir & Co. one hundred (100) barrels high-wines, ' iron bound,' at one dollar seven cents ($1.07) per proof gallon. The conditions of sale are as follows : The buyer can call from 1st July to 20th of same month by giving three days' notice, and if not called for by the 20th July the seller has the privilege of delivering up to the end of July by giving three days' notice; to be delivered in fifty barrel lots. To insure the fulfilment of this contract a margin of three hundred dollars will be put up by both parties."

On the 15th of July, 1870, Ames made a call upon Phillips & Carmichael, brokers for Robert Moir & Co., in the city of Chicago, for the high-wines mentioned in this writing, deliverable on the 18th instant. Shortly before this call the bonded warehouse of Moir & Co. was burned, destroying the wines from which they expected to meet any call by Ames. This made it necessary for the brokers to buy in the Chicago market, on account of their principal, enough high-wines to meet the demand of Ames. They obtained for that purpose fifty barrels of such wines from Conklin & Bro. and fifty from Lynch & Co., for delivery on the 18th at Ames's place of business in Chicago; and they were so delivered. The delivery was completed about six o'clock in the afternoon of that day.

In the opinion of the Supreme Court of Illinois in this case, *Ames* v. *Moir*, 130 Illinois, 582, 590, it is said: " After the high-wines had been delivered late in the afternoon of July 18, Ames absented himself from his place of business, and could not be found by the agents of Moir & Co. to make a demand of payment for the high-wines. They directed the porter in charge of Ames's warehouse to take care of the goods until morning, when they would call for the pay. When the agents called in the morning Ames was nowhere to be found, and they found that he had shipped fifty barrels of the high-wines for New York, and the remaining fifty barrels were loaded in cars ready for shipment. Phillips & Carmichael immediately replevied the fifty barrels which were found in cars in Chicago,

and went on to Detroit, Michigan, where they overhauled the other fifty barrels, and they were also replevied. Phillips & Carmichael sold the wines thus replevied to Shufeldt & Co. at ninety-seven cents per gallon, the market price at that time, and deposited the proceeds in bank to await the result of the replevin suits. It appears that between the time the wines were delivered, late in the afternoon of July 18th, and the time the agents reached Ames's store next morning, Ames had sent all the wines to the Michigan Central depot, shipped them, obtained bills of lading, which were attached to drafts on the consignee in New York, one for $2800 and the other for $2900, which drafts he discounted at the National Bank of Commerce on the security of the bills of lading. The replevin suits were defended by the National Bank of Commerce, and the defence interposed, that the bank was the pledgee of the wines from Ames in good faith, and without notice of Moir & Co.'s rights, was in the end sustained, *Michigan Central Railroad Co.* v. *Phillips*, 60 Illinois, 190, and the money realized on the sale of the high-wines to Shufeldt & Co. was turned over to the National Bank of Commerce in payment of the drafts."

It should be stated that a judgment by confession was taken against Ames in favor of a former partner, on which execution was issued, and under which the sheriff took possession of and closed up Ames's store. As soon as the levy was made, Ames went to his bank and checked against the proceeds of the drafts that were discounted on the security of the bills of lading in favor of a creditor whom he identified to the officers of the bank as the payee of the checks.

The present suit was brought by the defendants in error in the Superior Court of Cook County, Illinois, to recover from Ames the value of the high-wines taken to his place of business on the 18th of July, 1870, for delivery upon payment of the price. One of his defences — the only one of which this court can take cognizance — was that he was discharged September 13, 1872, by the District Court of the United States for the Northern District of New York, sitting in bankruptcy, from all debts and claims which, by the act of Congress, were "made

provable against his estate, and which existed on the 28th day of March, 1872, on which day the petition for adjudication was filed against him, excepting such debts, if any, as are by said act excepted from the operation of a discharge in bankruptcy."

There was a verdict and judgment in favor of the plaintiffs. That judgment was affirmed in the Appellate Court, and the judgment of the latter court was affirmed by the Supreme Court of Illinois. *Ames* v. *Moir &c.*, 130 Illinois, 582, 593. In respect to the defence based upon the discharge in bankruptcy, the Supreme Court of the State said: "It is also contended that Ames's discharge in bankruptcy was a bar to the action. Section 5117 of the Bankrupt Act is as follows: 'No debt created by the fraud or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting in any fiduciary character, shall be discharged by proceedings in bankruptcy.' Whether the debt in this case was created by the fraud of Ames, was a question of fact upon which the judgment of the Appellate Court is conclusive. But it is said incompetent evidence was admitted upon this question. No evidence was introduced, except such as tended to establish fraud on behalf of Ames, and the sufficiency of the evidence was a question for the jury. But it is said the debt was created when the contract was executed, — June 9, 1870, — and up to this time there was no fraud on the part of Ames. The debt was not entirely created until Ames induced the agents of Moir & Co. to place the wines in his possession, and if he obtained the possession by fraud, with the intent to ship the goods out of the country, and thus defeat the lien of the vendors, those were facts from which the jury might infer fraud within the meaning of the bankrupt law. *Darling* v. *Woodward*, 54 Vermont, 101. It is apparent from the evidence that Ames had no intention of paying for the wines when he called for them on the 15th day of July. His object seemed to be to get possession and control of the wines, and convert them to his own use without payment. This the evidence tends to show he did, and thus the debt was created."

*Mr. John G. Reid* and *Mr. William H. Barnum* for plaintiff in error.

It is provided in Rev. Stat. § 5117 that "no debt created by the fraud or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting in any fiduciary character, shall be discharged by proceedings in bankruptcy." This fraud must be positive actual fraud; not merely fraud in law. The evidence in this case did not show such fraud, and the Superior Court of Chicago erred in admitting it, and the Supreme Court of the State erred in affirming a judgment founded on it. *Neal* v. *Clark*, 95 U. S. 704; *Pierce* v. *Shippee*, 90 Illinois, 371; *Hennequin* v. *Clews*, 111 U. S. 676; *Palmer* v. *Hussey*, 87 N. Y. 303; *Cronan* v. *Cotting*, 104 Mass. 245; *Blow* v. *Gage*, 44 Illinois, 208; *Wood* v. *Clark*, 121 Illinois, 359; *Schroeder* v. *Walsh*, 120 Illinois, 403; *Morris* v. *Tillson*, 81 Illinois, 607; *Bowden* v. *Bowden*, 75 Illinois, 143; *Mey* v. *Gulliman*, 105 Illinois, 272, 285; *Hide & Leather Bank* v. *West*, 20 Ill. App. 61; *Hammond* v. *Noble*, 57 Vermont, 193; *Noble* v. *Hammond*, 129 U. S. 65; *Wolf* v. *Stix*, 99 U. S. 1; *Fisher* v. *Consequa*, 2 Wash. C. C. 382; *Choteau* v. *Jones*, 11 Illinois, 300, 318; *S. C.* 54 Am. Dec. 60; *United States* v. *Rob Roy*, 13 Bank. Reg. 235; *Jones* v. *Knox*, 8 Bank. Reg. 559; *Warner* v. *Cronkhite*, 13 Bank. Reg. 52; *Shuman* v. *Strauss*, 10 Bank. Reg. 300; *In re Williams & McPheeters*, 11 Bank. Reg. 145; *Brown* v. *Broach*, 16 Bank. Reg. 296; *Palmer* v. *Preston*, 45 Vermont, 154; *Springfield* v. *Edwards*, 84 Illinois, 626, 632, 633; *Law* v. *People*, 87 Illinois, 385, 393, 398; *Prince* v. *Quincy*, 105 Illinois, 138; *Prince* v. *City of Quincy*, 105 Illinois, 215; *Mattingly* v. *Wulke*, 2 Illinois App. 169; *City of Erie's Appeal*, 91 Penn. St. 398; *Wallace* v. *San Jose*, 29 California, 180.

*Mr. James K. Edsall* for defendants in error.

MR. JUSTICE HARLAN, after stating the case, delivered the opinion of the court.

The only question for the determination of this court is whether Ames's discharge in bankruptcy was a bar to the

present action; and that question depends upon the inquiry whether the defendant is sued on account of a debt created by fraud within the meaning of the bankruptcy act. It is the settled doctrine of this court that "fraud" in the act of Congress defining the debts from which a bankrupt is not relieved by a discharge in bankruptcy means "positive fraud, or fraud in fact involving moral turpitude or intentional wrong, as does embezzlement, and not implied fraud or fraud in law, which may exist without the imputation of bad faith or immorality." *Neal* v. *Clark,* 95 U. S. 704, 709; *Wolf* v. *Stix,* 99 U. S. 1, 7; *Hennequin* v. *Clews,* 111 U. S. 676, 682; *Strang* v. *Bradner,* 114 U. S. 555, 559; *Noble* v. *Hammond,* 129 U. S. 65, 69; *Upshur* v. *Briscoe, post,* 365.

The argument, in behalf of the defendant, proceeds, mainly, upon the ground that the claim or debt, on account of which he is sued, was created by the writing of June 9, 1870; and as that writing was executed in good faith, nothing done by him at a subsequent date for the purpose of obtaining possession of the high-wines for which he contracted, could be proved under the issue as to whether the claim or debt was created by fraud. This view of the transaction is inadmissible. The writing referred to did not, in itself, create a debt within the meaning of the bankruptcy act. It could not become effective as an instrument creating a debt in favor of plaintiffs until, pursuant to a call by defendant prior to July 20, they delivered, or offered to deliver, to him, the high-wines he agreed to take at the price stipulated, or — the defendant failing to make a call for them within the time limited for his doing so — until the high-wines were delivered, or tendered, to him by the plaintiffs, after the 20th and before the end of the month of July. When the plaintiffs delivered, or offered to deliver, the high-wines at the defendant's place of business on the 18th of July, in fulfilment of the agreement of June 9, and defendant failed to pay for them, then, and not before, was a debt created within the meaning of the bankruptcy act. Until the 18th of July, or, at least, until the defendant took possession, without making payment, of the high-wines that were left at his place of business in discharge of the plaintiffs' obligation to

deliver upon three days' notice, there was no debt for which the plaintiffs could maintain an action against the defendant, or which would have been provable against his estate in bankruptcy. If the month of July, 1870, had passed without any call by the defendant for the high-wines, and without the plaintiffs' exercising the privilege they reserved of delivering or offering to deliver before the end of that month, the writing of June 9, 1870, would have been of no value to any one; which fact shows that that instrument did not, in itself, create a debt, and that no debt could be created by it without the exercise by one or the other of the parties of the privilege reserved to each respectively.

The vital inquiry, therefore, is whether the defendant in making the call on the 15th day of July for the high-wines, and in taking possession of them without payment on the 18th, and shipping them on the cars, committed such fraud, in fact, as involved moral turpitude or intentional wrong upon his part. As the jury was instructed that Ames's discharge in bankruptcy was a complete defence to the action unless it appeared, by a preponderance of evidence, that he was guilty of positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, it must be assumed that they found that in the creation of the debt in question he had committed fraud of that character. When the wines were delivered, Moir & Co. were entitled to payment. Delivery and payment were, substantially, concurrent acts. And if Ames made his call, with the knowledge that he was then insolvent, and with the purpose of getting possession of the wines and shipping them out of the State without paying for them according to the terms of the executory agreement of June 9, and received them with that preconceived intent,— and there was evidence that justified the jury in so finding — he was guilty of fraud in fact, involving moral turpitude or intentional wrong, and is not protected against the claim of the plaintiffs by his discharge in bankruptcy. Such was the view taken by the court of original jurisdiction and by the Supreme Court of Illinois.

There is no error in the record in respect to the question of Federal law arising in the case, and the judgment is

*Affirmed.*