## YUSEM v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit. September 19, 1925.)

No. 3274.

1. **Post office** &⩜49—**Conviction for use of mails to defraud held not supported by evidence.**

An indictment charging that defendant knowingly and willfully devised a scheme to de-

fraud, to be carried out by use of the mails, based on the sending out by defendant through the mails, as a basis for future credit, of a financial statement of the firm of which he was a member, *held* not supported by evidence showing that the statement of liabilities was correct, that the statement of assets, while not accurate in all respects, was as to a number of items less favorable to the firm than warranted by the books and that in total it varied from the books not more than 1 per cent.

2. **Post office** &⩜35—**False representation must have been made with fraudulent intent.**

A false representation does not amount to fraud unless it be made with fraudulent intent.

3. **Criminal law** &⩜562—**Conviction must be reversed where evidence is consistent with innocence.**

Where all substantial evidence is as consistent with innocence as with guilt, it is the duty of an appellate court to reverse a judgment of conviction.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Criminal prosecution by the United States against David R. Yusem. Judgment of conviction (2 F.[2d] 163), and defendant brings error. Reversed, and new trial granted.

Harry Shapiro, of Philadelphia, Pa., for plaintiff in error.

George W. Coles, U. S. Atty., and L. Le Roy Deininger, Asst. U. S. Atty., both of Philadelphia, Pa.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. The writ of error in this case was taken to review a judgment of the District Court in which David R. Yusem, defendant, was sentenced to imprisonment for a term of eight months in the Mercer county jail at Trenton, N. J. He was indicted, tried, and convicted for having devised a scheme or artifice to defraud by means of false and fraudulent representations, and for having used the post office establishment for the purpose of executing the scheme, in violation of section 215 of the federal Criminal Code (Comp. St. § 10385). His brother, Maurice Yusem, with whom he was engaged in business under the name of Yusem Bros., was indicted and tried with him, but was acquitted by the direction of the court because it appeared that he had nothing to do with devising the scheme or using the mails. The scheme which the defendant is alleged to have devised was the submission through the United States mails of an alleged false and fraudulent statement prepared by him or

under his direction to prospective creditors for the purpose of obtaining credit from them. The statement is alleged to be false and fraudulent, in that it represented the net worth of the business of the Yusem Bros. to be larger than it in truth was on February 1, 1922.

[1] The following is a copy of the statement which he sent through the mails to the American Woolen Company and Samuel M. Karon, Inc.:

"Assets.

| | |
|---|---|
| Merchandise on hand at market value | $ 50,801.35 |
| Accounts receivable, good | 48,921.18 |
| Machinery and fixtures, Perkasie | 13,408.00 |
| Cash in First National Camden Bank | 3,117.81 |
| Cash in First National Bank Commerce Bank | 582.19 |
| Cash on hand | 1,100.00 |
| Fixtures, 1215 Market St. | 2,600.00 |
| Real estate, equity, Perkasie | 3,600.00 |
| Real estate, equity, homes | 3,900.00 |
| Building & Loan Association | 4,750.00 |
| Factory, Doylestown, Pa. | 5,610.00 |
| Total assets | $138,390.53 |

"Liabilities.

| | |
|---|---|
| For merchandise | $ 4,410.20 |
| Notes payable | 4,600.00 |
| Bank accommodation | 41,450.00 |
| Borrowed money | |
| Total liabilities | $50,460.20 |
| Net surplus | 87,930.33 |
| Rent, per annum | 3,500.00 |
| Insured for | 50,000.00 |
| Sales last year | 250,000.00 |
| Losses by bad debts | 2,400.00 |

"The details of all of the above figures are contained in our books. We keep the following books of account: Sales, ledger, cash, purchases."

There is no question as to the accuracy of the list of liabilities. The attack is on the correctness of the assets. The government attempted to establish the incorrectness of the list of assets, given in the statement, from the books. A certified public accountant testified that the statement when compared with the books, contained the following overstatements: $2,338.78 in the accounts receivable; $1,300, equity in real estate in Perkasie; $1,000, equity in real estate in homes (in Philadelphia); and $1,476.93 on building and loan stock. The books do not contain the "merchandise inventory" of $50,-801.35 appearing in the statement, but its correctness was admitted, and so is not in dispute. On the other hand, the evidence shows that in some items the figures in the books exceed those in the statement. The difference, however, between them was only $3,732.87, according to the government's evidence, as the following comparison shows:

| | Value of Assets Set Out in Financial Statement | Value as Per Books and Records. |
|---|---|---|
| Merchandise inventory | $ 50,801.35 | $ 50,801.35 |
| Accounts receivable | 48,921.18 | 46,532.40 |
| Cash on hand—none | | 1.92 |
| Cash in bank | 4,800.00 | 6,024.04 |
| Machinery and fixtures | 13,408.00 | 13,761.42 |
| Factory at Doylestown | 5,610.00 | 6,233.48 |
| Real estate equity in Perkasie | 3,600.00 | 2,200.00 |
| Real estate, equity in homes | 3,900.00 | 2,900.00 |
| Building & Loan Association stock | 4,750.00 | 3,273.00 |
| Fixtures, Philadelphia | 2,600.00 | 2,800.00 |
| Totals | $138,390.53 | $134,627.66 |

While the accounts receivable are $2,388.-78 more in the statement than in the books, according to the government's evidence, defendant says there are two accounts receivable in the books, one of J. Birenbaum for $2,060.99, and the other an "account receivable Doylestown" for $317.90, which are neither in the statement nor in the list of assets prepared by the government's expert. If these are credited to defendant, the difference between these accounts in the statement and in the books would be only $9.89, and the difference between the net worth of the business as shown in the statement and books would be only $1,383.98 or about 1 per cent. of the assets. There are also four other accounts aggregating $3,060.82, appearing, according to defendant, in the books, which were apparently not credited to the defendant by the government's accountant. If credit had been given by the government to the defendant for all these accounts, the assets appearing in the books would exceed those in the statement.

The indictment charges that the defendant knowingly and willfully devised a scheme and artifice to defraud by means of false and fraudulent representations. Some of the figures contained in the statement are incorrect, but the errors are not always in favor of the defendant. According to the statement, the cash in bank was $4,800, but in the books, which in this item are apparently correct, it was $6,024.04. The value of the factory at Doylestown according to the statement was $5,610, while the books gave it as $6,233.46. The value of the fixtures in Philadelphia, as contained in the statement, was $2,600, but in the books it was $2,800.

Some of the differences between the figures in the statement and books are easily ex-

plained. The equity in real estate in Parkasie was given in the statement as $3,600, but in the books it was $2,300, which represented, not the market value, but the "cost," and that word had been stricken out and the word "equity" written in its place. In the statement, the equity in the Philadelphia real estate was given as $3,900, which represented the market value, but in the books it was given as $2,900, which represented "cost." The amount of equity in real estate depends upon market value at any given time, and this value without an actual sale is a matter of opinion. With the phenomenal rise in the price of real estate generally, no one could say that the value of the equity given in the statement was not the honest judgment of the defendant and absolutely correct, and there was no testimony to the contrary.

The charge that the defendant substituted figures of his own for those in the books loses its significance in the light of the fact that in some cases he was estimating his equity based upon market value of the real estate and not its original cost, and in others the figures are less in the statement than in the books, and so are against him. As to the value of the building and loan association stock, the figures in the books, it was alleged, represent its original value, at the beginning, but those in the statement represent the value of the stock with its accrued earnings.

[2] It is not literally true that the details of all the figures are contained in his books as defendant stated, but a defendant may not be convicted of a crime on careless bookkeeping or careless statements, unless the carelessness is so gross as to amount to fraud or to warrant a finding that he acted fraudulently. An untrue statement, "a false representation, does not amount to fraud unless it be made with fraudulent intent." Cooper v. Schlesinger, 111 U. S. 148, 4 S. Ct. 360, 28 L. Ed. 382; Strang v. Bradner, 114 U. S. 555, 5 S. Ct. 1038, 29 L. Ed. 248; Noble v. Hammond, 129 U. S. 65, 9 S. Ct. 235, 32 L. Ed. 621; Ames v. Moir, 138 U. S. 306, 11 S. Ct. 311, 34 L. Ed. 951; Upshur v. Briscoe, 138 U. S. 365, 11 S. Ct. 313, 34 L. Ed. 931. This court said, in the case of Gilpin v. Merchants' National Bank, 165 F. 607, that, in order to prevent a discharge in

bankruptcy, the false statement submitted for the purpose of obtaining credit "should be knowingly and intentionally untrue, in order to constitute a bar to the discharge of the bankrupt. In other words, 'false statement' connotes a guilty scienter on the part of the bankrupt. This primary and ordinary meaning of the word 'false' cannot be ignored." But proof that will sustain a conviction in a criminal case must be stronger than that which will bar a discharge in bankruptcy. In re Collins (D. C.) 157 F. 120, 123. It necessarily follows that it was incumbent upon the government to show beyond a reasonable doubt that the defendant knowingly and willfully devised a scheme and artifice with intent to defraud by means of the statements sent through the mails. On no logical and reasonable interpretation of the evidence as a whole can such a conclusion be reached. The fact that in some of the items constituting assets the amounts are admittedly less in the statement than in the books is inexplicable on the theory of the government. While the figures in some respects may indicate carelessness, yet the aggregate result is substantially correct.

[3] When all the facts are considered, we are unable to reach any other conclusion than that the statement showed nothing more than a possible carelessness, and not a scheme and artifice knowingly and willfully devised with intent to defraud. "Unless there is substantial evidence of facts which exclude every other hypothesis but that of guilt, it is the duty of the trial court to instruct the jury to return a verdict for the accused; and where all the substantial evidence is as consistent with innocence as with guilt, it is the duty of the appellate court to reverse a judgment of conviction." Hart v. United States, 84 F. 799, 808, 28 C. C. A. 612; Union Pacific Coal Co. v. United States, 173 F. 737, 740, 97 C. C. A. 578; Wright v. United States, 227 F. 855, 857, 142 C. C. A. 379; Joseph Wiener et al. v. United States (C. C. A.) 283 F. 799, 801. The evidence was not sufficient to sustain the verdict, and the jury should have been instructed to return a verdict for the defendant on the motion of his counsel at the conclusion of the government's case.

The judgment is therefore reversed, and a new trial granted.