## DAVIS v. HOWE et al.

No. 21620. Jan. 16, 1934.

Rehearing Denied Feb. 27, 1934.

Application to File Second Petition for Rehearing Denied March 13, 1934.

Edward Howell and Elmer L. Fulton, for plaintiff in error.

Hall & Thompson and Gasper Edwards, for defendants in error.

WELCH, J. This is an appeal from the district court of Oklahoma county, growing out of a controversy resulting from the efforts on the part of defendants in error, Chas. E. Howe and Nellie R. Howe, to enforce the collection of a judgment rendered in their favor and against the plaintiff in error, J. C. Davis.

The essential facts for an examination of the issues presented, and for a determination of this cause, are here stated as briefly as appears possible.

On December 6, 1920, defendants herein filed their petition in the district court of Oklahoma county against plaintiff in error in this cause, and others, wherein they alleged that on September 22, 1920, and long prior thereto, they were the owners of a 320-acre farm in Washita county, Okla. That at about said time they listed the farm with plaintiff in error for sale at $14,000, agreeing to pay $500 to Davis as commission for the sale if made for cash, and $250 in case the farm was disposed of in a trade; that thereafter Davis represented to them that he had procured a buyer for the farm who would pay $14,000 for same, but would give in payment thereof, in lieu of cash, a flat building located in Oklahoma City valued by the owner at $14,000, explaining at the time that it would be necessary for them to pay to the owner of the flat the sum of $1,214.65 in cash, being the difference represented by mortgages on the farm and on the flat respectively.

That thereafter Davis obtained of them a deed to the farm wherein the name of the grantee was left blank for the reason that, Davis explained to them, he did not at the time know the initials of Aulbach, who was the owner of the flat. At the same time they gave Davis $1,000 purportedly to equalize the difference in the mortgages, and also at the time gave Davis their note for the sum of $400 and $39.65 in cash as his commission; they alleged, further, that Davis, as their agent, was guilty of wrongful and fraudulent conduct in such transaction, in that he did not sell the farm to Aulbach, but inserted his own name therein as grantee and recorded the same and sold the land to other parties for $14,000, retaining for himself a one-half interest in the oil and gas rights, which they alleged to be of a reasonable value of $5,000. They alleged, further, that Davis then bought the flat building for $10,000 and induced Aulbach to convey the same direct to them; they alleged that Davis fraudulently represented to them that Aulbach valued the flat building at $14,000 and that he would not take any less for the same; that Davis assured and represented to them that the flat building was worth more than $14,000, and that the only reason he was able to obtain the same for them for that price was that Aulbach did not know the value thereof; that Davis represented to them that Aulbach had examined the farm and that he would trade his flat building even for

the same, except that he demanded a payment of certain money to equalize the difference in the amount of mortgages on the respective properties; they further alleged that Davis, still acting in such a fiduciary capacity, wrongfully retained what is described as "profits" out of the transaction, and alleged that they were entitled to have the money and notes obtained by Davis for the sale of the farm decreed to be their property.

They alleged that Davis made such false and fraudulent representations with the fraudulent intent of cheating and defrauding them while acting in a fiduciary capacity, and that such acts did cheat and defraud them, and that they would not have acted as they did in the premises but for the fact that they believed the false and fraudulent statements of Davis, and that they had thereby been damaged in the sum of $6,900, and prayed judgment for that amount.

The defendant, Davis, answered by admitting that the Howes had listed their farm with him for sale for $14,000; that he had inserted his own name in the deed to the farm instead of Aulbach, and recorded the same; that he had sold the same to parties other than Aulbach for $14,000, accepting therefor some cash and notes made payable to him; that he had purchased the flat building from Aulbach for $10,000, and had procured Aulbach to make the deed direct to the Howes. He specifically denied, however, that he had at any time misrepresented any material facts to the Howes in any of the transactions, and, as we view it, based his defense upon the theory that the Howes at all times were fully advised of the manner and method and terms of the entire transaction. The answer contained a cross-petition demanding judgment against the Howes for the amount due on the note which the Howes had executed and delivered to him as his commission.

Upon trial of the issues thus made up, judgment was rendered in favor of the Howes and against the defendant, Davis, in the sum of $4,500 and costs, the court at the same time ordering Davis to convey to the Howes the one-half interest in the oil and gas rights retained by him, and to transfer and assign to them certain notes which he had taken upon sale of the farm, which if done would be taken in full settlement and satisfaction of the judgment. There was contained therein a finding that Davis had failed to establish his cause of action on the commission note, and judgment thereon was refused.

On June 28, 1929, the Howes caused to be issued out of the district court of Oklahoma county an execution which was levied upon properties belonging to Davis in pursuance of the above-mentioned judgment. Davis filed his motion to recall and quash this execution, alleging as grounds therefor that on March 19, 1926, he had filed his voluntary petition in bankruptcy in the United States District Court for the Western District of Oklahoma, listing as one of his provable debts the said judgment, and that thereafter, on September 11, 1926, the said United States District Court rendered judgment fully discharging him from his debts, including this particular judgment.

Upon hearing this motion the trial court permitted the introduction of considerable testimony, obviously upon the theory that the judgment under consideration was ambiguous in so far as it did or did not reveal whether or not it was such a debt as may be released under the Federal Bankruptcy Act. The Howes contending there, as here, the judgment was one of the debts excepted by the Bankruptcy Act from release. It was shown upon this hearing that there was testimony taken at the trial resulting in the judgment to the effect that sometime after listing the farm Davis told Howe that he had an offer of $10,000 for the farm, and Howe told Davis he would not take it; that Davis also told Howe that he could not sell the farm, but that he could trade it for a flat; that the owner of the flat wanted $14,000 for it; that Davis told Howe he could not sell the farm for $14,000, but could sell the flat for that amount, and that the flat could be sold to better advantage than the farm; that Davis had already sold the farm to other parties for $14,000 before he took the deed from the Howes, and that the Howes did not have any information concerning the sale of the farm to other parties for $14,000, or that the flat had been or could be purchased for $10,000, at any time prior to the completion of the transaction; that Howe would not have made the deal which was made had he known that the farm could have been sold for $14,-000. The gist of Davis' testimony is in line with his answer, and to the general effect that he did not conceal facts or misrepresent the facts to the Howes.

At the conclusion of the hearing the trial court refused to recall and quash the execution, and Davis has appealed to this court

for reversal of the action of the trial court.

The question to be determined here is whether or not the judgment rendered against Davis on September 9, 1921, is such as may be released and discharged by a discharge in bankruptcy. The applicable portion of the Federal Bankruptcy Act is found in section 35 of title 11, U. S. Code Annotated, the same being a portion of the Bankruptcy Act of July 1, 1898, chapter 541, paragraph 17, 30 Stat. 550, as amended, and we quote therefrom as follows:

"Debts not affected by a discharge. A discharge in bankruptcy shall release a bankrupt from all of his provable debts except such as * * * (second) are liabilities for obtaining property by false pretenses or false representations, * * * or (fourth) were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity. * * * (July 1, 1898, c. 541, sec. 17, 30 Stat. 550; Feb. 5, 1903, c. 487, sec. 5, 32 Stat. 798; Mar. 2, 1917, c. 153, 39 Stat. 999; Jan. 7, 1922, c. 22, 42 Stat. 354.)"

Plaintiff in error devotes a large part of his brief toward support of the proposition that "a judgment based on fraud is dischargeable", making the point that it is only such judgments as are liabilities for obtaining property by false pretenses or false representations that are exempted from discharge under the Bankruptcy Act, citing in support of such argument vol. 7, secs. 3357 and 3538, Remington on Bankruptcy; Collier on Bankruptcy (10th Ed.) 391; Rudstrom v. Sheridan (Minn.) 142 N. W. 313; Gleason v. Thaw, 185 Fed. 345; Zimmern v. Blount, 238 Fed. 740, and in connection with the suggestion that if there was any fraud involved, it was only constructive fraud, citing section 4997, C. O. S. 1921, and Ames v. Moir, 138 U. S. 306, 34 L. Ed. 951. The gist of the argument on this point is to the effect that even if it be conceded that the judgment was rendered upon the theory that Davis made fraudulent representations to the Howes, and if the judgment was in fact based upon fraud, it is still such a debt or judgment as may be discharged in bankruptcy, for the reason that no property of the Howes was obtained by Davis as a consequence or result thereof. We do not agree with this contention. The record here shows that at the trial of the cause resulting in the judgment there was ample competent evidence to show that Davis obtained the deed to the farm from the Howes by reason of his willful misrepresentations of facts, one of the material misrepresentations being that

the farm could not be sold for $14,000, when in fact Davis had already sold the farm to other parties for that amount at the time he obtained the deed. The $14,000 representing the proceeds of the sale of the farm at all times remained the property of the Howes. Davis obtained this property from the Howes, according to competent testimony, and retained at least a portion of such property only and solely by reason of his deliberate, intentional, and wrongful misrepresentations of the facts to the Howes. Having reached that view, it is unnecessary for us to consider the citations of authorities offered, further than to say that herein they are inapplicable.

Plaintiff in error urges that the burden of proof is on the judgment creditors to show that their judgment comes within the exceptions contained in the Bankruptcy Act, and when the judgment might have been based on contract, or on any exception in the act, or on both, the burden is not sustained. And in support of this contention he cites Remington on Bankruptcy, vol. 7, sec. 3535; Hallagan v. Dowell (Iowa) 161 N. W. 177; Guindon v. Brusky (Minn.) 170 N. W. 918; Cook v. Plaisted (Mass.) 62 N. E. 1054; L. & N. R. Co. v. Bryant (Ky.) 149 S. W. 830; and other decisions of various courts.

Suffice it to say here in this connection that the record before us leads us readily to the conclusion that under the pleadings and issues presented thereby, and under the evidence presented upon the trial of the causes resulting in the judgment, it would be difficult, indeed, to conclude otherwise than that the judgment was the result of an adjudication upon the issue of obtaining property under false pretenses.

In Bullis v. O'Beirne, 195 U. S. 606, 59 L. Ed. 340, it is held:

"A judgment of a state court is rendered in 'an action for fraud' so as to be exempted by the Bankruptcy Act of July 1, 1898, * * * section 17, sub. 2, from the operation of a discharge in bankruptcy, where such judgment, whatever may be the form of the action, was based upon actual, as distinguished from constructive fraud of the bankrupt."

In Gahlen v. Patterson (N. H.) 141 Atl. 914, the court held:

"Liability for fraudulently obtaining property, which is not released by bankrupt's discharge under Bankruptcy Act, sec. 17, as amended by the Act of Feb. 5, 1903 (11 U. S. C. A. sec. 35), applies to claims growing out of fraudulent conduct, irrespec-

tive of form of cause of action sued on, and irrespective of whether there was a provable claim of fraud at the date of bankruptcy."

See, also, Neal v. Clark, 95 U. S. 704, 24 L. Ed. 586; Ames v. Moir et al., 138 U. S. 306, 34 L. Ed. 951.

In Chambers v. Kirk, 41 Okla. 696, 139 P. 986, this court held:

"A judgment on account of a liability for obtaining property by false pretenses or false representations is not released by a discharge in bankruptcy. * * *"

To the same general effect, see, also, Bloemecke v. Applegate, 271 Fed. 595, In re Pulver (Wash.) 264 P. 407, and Allison v. Cooper (Ark.) 4 S. W. (2d) 519.

In Kinney v. Vernor, 136 Okla. 166, 276 P. 750, this court held:

"A general discharge in bankruptcy resulting under the Bankruptcy Act of July 1, 1898, and amendments thereto does not bar a judgment creditor where such judgment is founded upon fraud and deceit practiced by the bankrupt upon such creditor."

"A discharge in bankruptcy does not automatically relieve the bankrupt from a debt even if scheduled and provable, but may be pleaded by him in defense to an action thereon; its effect in the particular case to be determined by the court in which the action is brought."

Finding no error in the action taken by the trial court in refusing to quash and recall the execution herein issued, the cause is affirmed.

RILEY, C. J, and SWINDALL, McNEILL, and BAYLESS, JJ., concur.