In re Clive R. HALLMAN, Jr., Bankrupt.

SAVERS INVESTMENT CORPORA-
TION, a Georgia Corporation,
Plaintiff,

v.

Clive R. HALLMAN, Jr., Defendant.

Bankruptcy No. 78–00129(H).

United States Bankruptcy Court,
W. D. Virginia,
Harrisonburg Division.

July 10, 1981.

M. Bruce Wallinger, Wharton, Aldhizer & Weaver, Harrisonburg, Va., for plaintiff.

Lewis F. Jolly, Harrisonburg, Va., for defendant.

## MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

Plaintiff, Savers Investment Corporation (Savers) seeks judgment against the Defendant, Clive R. Hallman, Jr. upon a debt alleged to be nondischargeable pursuant to § 17(a)(2) of the *Bankruptcy Act of 1898.*

Savers, filed this Complaint, however, the real party in interest is the malpractice insurance carrier of one James Beach, Esquire, a Georgia Attorney, for failure to discover and report the existence of a deed of trust upon property which the Defendant and his brother sold to Savers located in the State of Georgia and which is the instrument around which the Plaintiff claims its debt to be nondischargeable.

The facts relating to this Complaint are as follows: The Defendant, a professor at James Madison University ventured out into the building and development business in residential property in the Harrisonburg-Staunton area. In 1972 Defendant obtained a loan of approximately $240,000.00 from Planters Bank and Trust Company (Planters) in Staunton for the purpose of developing and constructing condominiums known as "Fox Hill Green". Proper security instruments were executed and given to Planters upon the real estate being devel-

oped as security therefor and as the residences were completed and sold credits would be made upon the loan accordingly. Due to the economic downturn in 1972, sales were slowed substantially. Repayments became delinquent as a result of which the Bank concluded that its loan required additional collateral in order to secure the Bank under the prevailing circumstances then existing surrounding the delinquencies.

In compliance with Planters request for additional collateral, the Defendant testified that due to the financial pressure then existing, he would have executed at that time any documents presented to him to additionally secure Planters. Defendant gave to Planters a deed of trust signed only by the Defendant upon his one-half undivided interest in a 142 acre tract of land co-owned with his brother in Georgia. The deed of trust upon the Georgia property was given in December, 1972, and was duly recorded and indexed in the Clerk's Office of the Superior Court of Douglas County, Georgia on December 18, 1972, wherein the property was located. In connection with the giving of the additional deed of trust, the Defendant testified which testimony was generally corroborated by the other evidence in the case as follows: that the Defendant, prior to executing the deed of trust, because of legal questions raised as to its validity, consulted with his local counsel, Norvell A. Lapsley, Esq. in Harrisonburg as to the validity of the deed of trust; that Mr. Lapsley being uninformed as to the law of Georgia on the subject advised the Defendant that he would seek counsel from a Georgia lawyer concerning the question.

Mr. Lapsley thereafter consulted with one William Uselton, Esquire (now deceased) a Georgia attorney who gave a deposition but whose death occurred prior to the trial of this case. Following the inquiry from Mr. Lapsley concerning the legal issue in question, Mr. Uselton consulted with various lawyers in Georgia, as well as experts at a law school concerning the issue. His inquiry also included the said Mr. Beach, the Closing Attorney who handled the sale of property from the Defendant and his brother to the Plaintiff and whose malpractice insurance carrier is the real party in interest herein; that in essence the decision as to the matter, was that the deed of trust was probably invalid as a lien upon the property in the State of Georgia. Mr. Uselton did not specifically in his deposition so acknowledge, but the substance of the evidence as a whole, from the Defendants standpoint was the belief the deed of trust was invalid. Defendant was so informed by Mr. Lapsley and in conversation with Mr. Usleton just prior to the closing in Beach's Office.

Benham Black, Esq., Counsel for Planters, during the course of the transactions expressed the opinion that the deed of trust as contemplated would be a valid lien. Defendant broached the question in view of the opinion received from Mr. Lapsley as a result of inquiries to the late Mr. Uselton representing what to the Defendant was an authoritative opinion of the law of Georgia.

In July 1973, Planters and Defendant renegotiated an update of the loan which included among other documents the deed of trust upon the Georgia property here in issue.

In early 1973, the Defendant and his brother entered into a contract to sell the Georgia property to Savers. The closing of the sale transaction occurred in August, 1973 at the offices of Mr. Beach in Atlanta. This was the first time the Defendant had seen or met Mr. Beach who was employed as the Closing Attorney by Savers in connection with their purchase, although his fee was partially paid by the Defendant and his brother. The evidence further showed that Defendant understood that Mr. Beach was one of the Attorneys with whom Mr. Uselton had conferred with reference to the validity of the deed of trust in question.

The Defendant testified forthrightly and candidly that he consulted again with his Georgia attorney, Mr. Uselton, prior to the closing and was again assured that the deed of trust was not valid and did not constitute a lien upon the property.

Mr. Beach and his Law Firm in addition to acting as Closing Attorney, undertook to make a title examination as to the real estate through an employee who apparently was not a lawyer and in reliance upon the examination a part of which was information Mr. Beach obtained from Mr. Uselton who had previously examined the title, failed to discover, report and certify in the title examination prepared for Savers, the deed of trust allegedly securing the Planters note. This was overlooked although the deed of trust was properly recorded and indexed in the appropriate clerk's office wherein the real estate was situated.

At the closing, the Defendant, his brother and officials of Savers executed numerous documents which the Defendant described as routine documents in connection with such a closing, among which was an affidavit that the property was free of liens with certain exceptions. The Defendant testified, in effect, that he relied upon the Closing Attorney, Mr. Beach, in his preparation of documents and routinely executed all documents including the affidavit. The Defendant testified that he was not sure that he read the affidavit, but in any event he did not hesitate to sign the affidavit because he was laboring under the impression that the deed of trust to Planters was invalid. The deed of trust to Planters was never mentioned in any manner at the closing either by the Defendant or the Closing Attorney who was certifying the title. The Defendant testified that this simply confirmed in his own mind what he had been previously advised, that the deed of trust was not a valid lien and he not being an attorney assumed that was the case when no mention was made of it at the closing of the sale transaction. The Defendant further testified that the first time he heard to the contrary concerning the validity of the lien was from a call received from his father that Planters was seeking to foreclose on a deed of trust upon the Georgia property in late 1975 or early 1976, approximately three years following the sales transaction.

Objection was interposed to testimony of Mr. Lapsley concerning conversation with Mr. Uselton relating to the deed of trust as corroborative of the Defendant's testimony. The Court holds that said testimony of Mr. Lapsley is admissible under applicable rules of evidence. However, such is not essential to support defendant's position and if it is so assumed, the essential testimony of the Defendant concerning the opinion expressed by Uselton leading the Defendant to believe that the deed of trust was invalid is corroborated generally from the entire testimony of Mr. Uselton. This is particularly true when viewed in light of the details of his inquiries and efforts to determine the legal status of the matter in order to advise Mr. Lapsley with reference to Georgia law.

The Statutory language in question is § 17(a)(2) [11 U.S.C. § 35(a)(2)] which states as follows:

"a discharge in Bankruptcy shall release a Bankrupt from all of his provable debts, whether allowable in full or in part, except such as ... (2) are liabilities for obtaining money or property by false pretenses or false representation or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive, ..."

The Supreme Court has construed the standard of proof under these statutes as follows:

"It is the settled doctrine of this court that 'fraud' in the act of Congress defining the debts from which a bankrupt is not relieved by a discharge in bankruptcy means 'positive fraud, or fraud in fact involving moral turpitude or intentional wrong, as does embezzlement, and not implied fraud or fraud in law, which may exist without the imputation of bad faith or immorality'."

See *Oriel v. Russell*, 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419, *Ames v. Moir*, 138 U.S. 306, 11 S.Ct. 311, 34 L.Ed. 951.

In *Neal v. Clarke*, 95 U.S. 704, 24 L.Ed. 586, the Supreme Court states the standard further as follows:

The frauds included in the portion of clause (2) "under discussion are those which, in fact involve moral turpitude or intentional wrong; fraud implied in law which may exist without imputation of bad faith or immorality is insufficient."

■■■ *Federal Bankruptcy Rules of Procedure* 407 places the burden of proof of all essential facts upon the Plaintiff in this case. Not only does the Plaintiff have the burden of proof but it is also confronted with the rule that all exceptions set forth in § 17(a)(2) are to be strictly construed in favor of the Defendant. *See Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717. The clear doctrine of the Supreme Court in addressing the discharge of debtors and to construe the congressional enactment, is to give to debtors "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); *Lines v. Frederick*, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970); *Local Loan Company v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *Lewis v. Roberts*, 267 U.S. 467, 45 S.Ct. 357, 69 L.Ed. 739 (1925); *Williams v. United States Fidelity and Guaranty Company*, 236 U.S. 549, 35 S.Ct. 289, 59 L.Ed. 713 (1915).

■■ Viewing the facts of this case against the backdrop of the foregoing rules laid down by the courts, the court must conclude that the burden of proof has not been sustained by the Plaintiff. Under *Federal Bankruptcy Rules of Procedure* 407, *supra*, as well as the cases herein cited, it is apparent that fraud is never presumed but must be proved by clear, cogent and convincing evidence as to all material and essential facts related thereto.

In *1A Collier on Bankruptcy* § 17.16 commencing at Page 1634 the authority states: "The frauds included in the portion of clause (2) under discussion are those which in fact involve moral turpitude or intentional wrong; fraud implied in law, which may exist without imputation of bad faith or immorality, is insufficient. It must further affirmatively appear that such representations were knowingly and fraudulently made, and that they were relied upon by the other party."

■■ The essential facts appearing from the evidence are that the Defendant had bona fidely and in good faith, sought and obtained to the best of his ability from members of the legal profession in Virginia and Georgia, a decision as to the validity of the deed of trust in question. The advice obtained in the Defendant's own words which he forthrightly testified to before the Court, was that in his mind the deed of trust was invalid. The Defendant stated that he felt his authoritative information from a member of the Georgia Bar was authoritative on the issue. When he attended the closing in Atlanta and no mention of the deed of trust was made by the Closing Attorney who had examined and certified the title for the purchasers, this was in the Defendant's mind, a complete confirmation of the prior opinion that the deed of trust was in fact invalid.

From the evidence as a whole, this Court cannot find sufficient proof present in these facts concerning the question of the interpretation of the law of the State of Georgia which comports to the standard laid down by the Supreme Court. It is indeed ironic that the title examiner failed to pick up the encumbrance.

In effect, this omission confirmed the total misunderstanding of the Defendant as to the validity of the deed of trust in question.

■■ Additionally, another essential element of proof in this case remains unsupported by the evidence. The Plaintiff contends that it relied upon the affidavit executed by the Defendant attempting to certify as to the encumbrances upon the property. The Plaintiff had engaged its own counsel, Mr. Beach, to examine the title and certify to the Plaintiff and the title insurance company a legal opinion relating thereto. Unfortunately, the certification

omitted the encumbrance of the deed of trust of Planters. To say that the Plaintiff relied upon the affidavit in question when it had engaged the services of its own attorney to insure the Plaintiff of a good and sufficient title and to obtain title insurance thereon, is to ignore the realities of the facts and evidence of the case. Assuming the Defendant intended to deceive by the affidavit (which the Court finds he did not), it cannot be said further that the Plaintiff relied upon such an affidavit. The conclusion must be made that the purchaser was relying upon its counsel, Mr. Beach and his Law Firm and the title insurance company to insure it of a good and sufficient title. To seek a judgment of nondischargeability against the Defendant for the negligent malpractice liability incurred by Mr. Beach's liability insurance carrier for the attorney's negligence in failing to report the deed of trust, is to distort the intent of § 17(a)(2) and the facts relating to this case.

The Court finds as herein set forth, that the Defendant acted in good faith throughout these transactions, his testimony from the witness stand was candid and forthright. His demeanor was honest and his answers were given openly and without hesitation.

It is accordingly

### ADJUDGED AND ORDERED

that the prayer of the Complaint be denied, the debt dischargeable and the Complaint dismissed.