In re Kelly Brown SPANGLER, Debtor.

The FIRST NATIONAL EXCHANGE
BANK OF MONTGOMERY
COUNTY, Plaintiff,

v.

Kelly B. SPANGLER and G. Steven
Agee, Trustee, Defendants.

Bankruptcy No. 7–81–00236.
Adv. No. 7–81–0165.

United States Bankruptcy Court,
W. D. Virginia,
Roanoke Division.

Aug. 31, 1981.

Marcus H. Long, Jr., Blacksburg, Va., for plaintiff.

Byron R. Shankman, Pulaski, Va., for debtor/defendant.

G. Steven Agee, Roanoke, Va., trustee/defendant.

## MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

The Plaintiff seeks judgment that the Defendant's debts to it in the sum of $3,155.00 obtained by an alleged fraudulent statement and $4,860.00 representing proceeds of an insufficient funds check.

The facts essential to this decision are as follows: the Defendant was engaged in the real estate business and operated a mobile home park in Montgomery County wherein he did banking business with the Plaintiff bank. The evidence showed that representatives of the Plaintiff were familiar with the Defendant's banking and business practices, as well as his financial condition and the nature of his operations. The Defendant, because of tenant checks that failed to clear when they were deposited, developed a cash flow problem in his accounts which necessitated his application for a loan in the sum of $3,155.00. The loan was obtained upon an application completed by a representative of the Bank upon which is claimed to contain false information alleged to be misleading, relied upon, false and as a result of which, the loan was made. Prior thereto, the Defendant had other loans with the Bank for an automobile and had conducted banking business with the Plaintiff, as well as other banks in the area.

The evidence showed that the application (Plaintiff's Exhibit 2) was taken and executed within a fifteen or twenty minute period; that no additional investigation was made covering the contents thereof, apparently because the representative of the Plaintiff Bank knew the Defendant and his business operation. No further inquiries were made of other sources concerning his financial condition or ability at the time. It was stated to the Plaintiff's representative that the money was needed because of a cash flow crunch as a result of tenants checks returned insufficient funds. It appeared further that the Defendant's dealing with the Plaintiff bank was such that the Plaintiff without question issued a cashier's check to another bank upon the Defendant's check, apparently without any hesitation, which was in connection with the $4,860.00 item hereafter set forth.

The application was taken on December 17, 1980, and thereafter, on January 8, 1981, the Defendant issued to the Plaintiff a check upon the mobile home park account for $4,860.00 which account was at First Virginia Bank. The check was returned insufficient funds and other checks were issued by the Defendant between the Plaintiff and First Virginia Bank in the same or similar amounts. Finally, when the Plaintiff prevailed upon the Defendant a negotiable note was executed in the place of the insufficient fund check and shortly thereafter, the Debtor filed petition in this Court seeking a discharge of his debts.

In addition to the foregoing, the Plaintiff further alleged that the discharge should be denied because of the omission in the Defendant's schedule of certain insurance policies. The Defendant's explanation of the omission was that the policies were obtained and owned by his father, the cash surrender value of which was not considered an asset or was of inconsequential value.

The statute in question which governs the decision in this case is 11 U.S.C. § 523(a)(2) which states as follows:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; or

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

■ There is little difference in the language of the above section from the language of § 17 (11 U.S.C. § 35) of the Act of 1898. 11 U.S.C. § 523 is the new language of the Bankruptcy Reform Act of 1978. The language in the latter statute is stronger with reference to the burden of proof than of the old Act because it speaks of "actual fraud" and, consequently, eliminates any consideration of "constructive fraud" that prevailed under the Act of 1898. Therefore, the cases construing the old Act are important guidelines in considering cases under the Bankruptcy Code.

■ The elements necessary to be proved by clear, cogent and convincing evidence are:

(1) the Defendant made representations;

(2) that the representations were made in writing;

(3) that the Defendant knew at the time the representations were false when made;

(4) the representations were made with the intent to deceive;

(5) that they are relied upon by the Plaintiff to its detriment.

See Western Union v. Hurd, 116 F. 442 (C.C.1902).

The Supreme Court has construed the standard of proof under these statutes as follows:

It is the settled doctrine of this court that "fraud" in the act of Congress defining the debts from which a bankrupt is not relieved by a discharge in bankruptcy means "positive fraud, or fraud in fact involving moral turpitude or intentional wrong, as does embezzlement, and not implied fraud or fraud in law, which may exist without the imputation of bad faith or immorality."

See Oriel v. Russell, 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419; Ames v. Moir, 138 U.S. 306, 11 S.Ct. 311, 34 L.Ed. 951.

In Neal v. Clark, 5 Otto 704, 95 U.S. 704, 24 L.Ed. 586 the Supreme Court states the standard further as follows:

The frauds included in the portion of clause (2) "under discussion are those which, in fact involve moral turpitude or intentional wrong; fraud implied in law which may exist without imputation of bad faith or immorality is insufficient."

Federal Bankruptcy Rules of Procedure 407 places the burden of proof of all essential facts upon the Plaintiff in this case. Not only does the Plaintiff have the burden of proof but is also confronted with the rule that all exceptions set forth in § 523(a)(2) are to be strictly construed in favor of the Defendant. See Gleason v. Thaw, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717. The clear doctrine of the Supreme Court in addressing the discharge of debtors and to construe the congressional enactment, is to give to debtors "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." Perez v. Campbell, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); Lines v. Frederick, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970); Local Loan Company v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); Lewis v. Roberts, 267 U.S. 467, 45 S.Ct. 357, 69 L.Ed. 739 (1925); Williams v. United States Fidelity and Guaranty Company, 236 U.S. 549, 35 S.Ct. 289, 59 L.Ed. 713 (1915).

■ Viewing the facts of this case in light of the foregoing standard and law applicable thereto, the Court fails to find that the evidence reaches the point of being clear, cogent and convincing, that the financial statement was given with intent to defraud or was relied upon and accordingly, the amount of $3,155.00 alleged to be obtained as a result thereof should be discharged.

■ The allegation that the false petition as to the life insurance policies is insufficient to show the required intention that the statute commands and accordingly, the discharge will be issued excluding the debt as hereafter set forth.

With reference to the check for $4,860.00 a review of the facts and circumstances

makes it appear unto the Court that the quantum of evidence supports a finding of nondischargeability as to said sum.

The Defendant contends that the issuance of the note in place thereof vitiated the nature of the bad check circumstances. This Court does not so find.

The Defendant contends that the check was the result of his tenant's bad checks for monthly payments. There was no clear evidence that such a large sum of tenants' checks would have been returned as alleged. Even if a few tenants had issued insufficient fund checks, this in itself would not appear to account for the failure of the Defendant in payment of the check in question, particularly since the note was given shortly prior to the petition herein.

Accordingly, it is

ADJUDGED AND ORDERED that the discharge shall issue forthwith; that the debt in the sum of $4,860.00 is adjudged nondischargeable and judgment is accordingly issued in said amount with interest at the rate of 8% per annum from this date until paid and $60.00 costs of these proceedings.