**In re Danny Garland WITT, Sr., Wanda Robertson Witt, Debtors.**

**Raymond BISSETTE, Plaintiff,**

v.

**Danny Garland WITT, Sr. and Wanda Robertson Witt, Defendants.**

**Bankruptcy No. 7–80–00598.
Adv. No. 7–81–0187.**

United States Bankruptcy Court,
W. D. Virginia,
Roanoke Division.

Sept. 1, 1981.

David D. Walker, Salem, Va., for plaintiff.

John R. Patterson, Roanoke, Va., for debtors/defendants.

## MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

The issue is the dischargeability of a $10,-000.00 debt owing by the Defendants to the Plaintiff.

The Plaintiff and Defendants had for a period of time been business acquaintances when the Defendants because of cash flow problems with their Chevrolet dealership in Blacksburg decided to sell the Plaintiff their residence in Bluefield, Tazewell County, Virginia. The oral agreement appeared to be that the purchase price was $127,-500.00 consisting of the assumption by the Plaintiff of a deed of trust note in the approximate amount of $90,000.00, $10,-000.00 by check dated August 7, 1979, the date of the transaction and the payment to the Defendants of $27,000.00 upon the sale of the Plaintiff's residence in Roanoke. Thereupon the Plaintiff moved to Bluefield and placed his house in Roanoke for sale. The transaction was never closed. The property in Roanoke was never sold.

In December the parties had a conversation in which the Plaintiff advised the Defendants that his wife desired to move back to Roanoke and, in fact, did so in March of 1980. Prior to moving back to Roanoke, the Plaintiff placed the property in Bluefield with a realtor for sale. The property never sold. Following the conversation in December the Defendants, likewise, placed the property for sale with the same realtor. In April, 1980, the property was sold for $114,-000.00 which the Defendant testified was the best price available. The property was appraised at $139,000.00.

During conversations regarding the transaction the Plaintiff brought up the question of the $10,000.00 down payment but the matter was never resolved as the Defendant indicated that since the sale was not consummated at $127,000.00 the Defendants had a loss on the final sale and the Plaintiff had failed to sell his residence in Roanoke providing for the agreed payment of $27,000.00. The Plaintiff contends that the transaction should have been closed previously because there was no fixed time within which the $27,000.00 would be paid from the sale of his residence in Roanoke. The evidence showed that the Defendants disputed this.

The Defendants' business in Blacksburg deteriorated along with his personal financial condition until May 29, 1980, when the Debtor filed his petition seeking a discharge in this Court. The Defendants did not list the Plaintiff as a creditor stating that they did not believe they owed the Plaintiff the $10,000.00. Thereafter, in early 1981, the Plaintiff was added as a creditor and on May 27, 1981 filed this Complaint seeking a judgment of nondischargeability of his debt.

The Plaintiff contends that the Defendants' transfer of the Bluefield property was fraudulent which should exclude the debt from the discharge.

The statute in question which governs the decision in this case is 11 U.S.C. § 523(a)(2) which states as follows:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; or

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

■ There is little difference in the language of the above section from the language of § 17 (11 U.S.C. § 35) of the Act of 1898. 11 U.S.C. § 523 is the new language of the Bankruptcy Reform Act of 1978. The language in the latter statute is stronger with reference to the burden of proof than of the old Act because it speaks of "actual fraud" and, consequently, eliminates any consideration of "constructive fraud" that prevailed under the Act of 1898. Therefore, the cases construing the old Act are important guidelines in considering cases under the Bankruptcy Code.

■ The elements necessary to be proved by clear, cogent and convincing evidence are:

(1) the Defendant made representations;

(2) that the representations were made in writing;

(3) that the Defendant knew at the time the representations were false when made;

(4) the representations were made with the intent to deceive;

(5) that they are relied upon by the Plaintiff to its detriment.

*See Western Union v. Hurd*, 116 F. 442 (1902).

The Supreme Court has construed the standard of proof under these statutes as follows:

It is the settled doctrine of this court that "fraud" in the act of Congress defining the debts from which a bankrupt is not relieved by a discharge in bankruptcy means "positive fraud, or fraud in fact involving moral turpitude or intentional wrong, as does embezzlement, and not implied fraud or fraud in law, which may exist without the imputation of bad faith or immorality."

*See Oriel v. Russell*, 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419, *Ames v. Moir*, 138 U.S. 306, 11 S.Ct. 311, 34 L.Ed. 951.

In *Neal v. Clark*, 95 U.S. 704, 24 L.Ed. 586 the Supreme Court states the standard further as follows:

The frauds included in the portion of clause (2) "under discussion are those which, in fact involve moral turpitude or intentional wrong; fraud implied in law which may exist without imputation of bad faith or immorality is insufficient."

■ *Federal Bankruptcy Rules of Procedure* 407 places the burden of proof of all essential facts upon the Plaintiff in this case. Not only does the Plaintiff have the burden of proof but is also confronted with the rule that all exceptions set forth in § 523(a)(2) are to be strictly construed in

favor of the Defendant. *See Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717. The clear doctrine of the Supreme Court in addressing the discharge of debtors and to construe the congressional enactment, is to give to debtors "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); *Lines v. Frederick*, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970); *Local Loan Company v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *Lewis v. Roberts*, 267 U.S. 467, 45 S.Ct. 357, 69 L.Ed. 739 (1925); *Williams v. United States Fidelity and Guaranty Company*, 236 U.S. 549, 35 S.Ct. 289, 59 L.Ed. 713 (1915).

 The thrust of the Plaintiff's claim is that the sale of the Bluefield residence with his pending oral contract to purchase was fraudulent. The oral contract was entered into in August, 1979. 11 U.S.C. § 523(a)(2)(A) contemplates the obtaining of money by false pretenses, false representations or fraud. This statute necessarily means that the fraud exists at the time the Plaintiff parted with the $10,000.00. Not until April of 1981 was the property sold and nowhere in the evidence can the Court find any intent upon the part of the Defendants to obtain the $10,000.00 in August, 1979 or to defraud when the sale was consummated in 1980. The Plaintiff had failed to pay the $27,000.00, decided to move back to Roanoke and apparently had no further intention of selling the Roanoke residence as of December, 1979, presumably because the Plaintiff's wife desired to return to Roanoke. Even though no specific time frame was mentioned as to the payment of the $27,000.00, it is reasonable to assume and the Court so finds that the $27,000.00 should have been paid within a reasonable period of time. This is additionally true since the sole purpose for the sale of the residence was to aid his cash flow in his automobile dealership in Blacksburg where the $27,000.00 was needed. The evidence fails to show any diligence on the part of the Plaintiff to sell the Roanoke residence from which the $27,000.00 would come.

The Court must view the evidence in its entirety to determine the true intent of the parties. *See Wertz v. Rock-Ola, etc.* (4th Cir. 1964) 329 F.2d 116. When the entire evidence is viewed in this case, the Court is unable to find sufficient evidence to support the Complaint and accordingly, it is

ORDERED

that the prayer of the Complaint be denied and the debt discharged.