## UNITED STATES v. BAKER.
### No. 9054.

Circuit Court of Appeals, Third Circuit.
Argued January 7, 1946.
Decided Jan. 31, 1946.

George R. Sommer, of Newark, N. J. (Robert F. McAlevy, Jr., of Hoboken, N. J., on the brief), for appellant.

Vincent E. Hull, of Newark, N. J. (Edgar H. Rossbach, U. S. Atty., of Newark, N. J., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and O'CONNELL, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Appellant was convicted under Title 50, U.S.C.A.Appendix Section 311, of filing, or causing to be filed, with his local Selective Service Board, a certain false certificate on DSS Form 42-A entitled "Affidavit—Occupation Classification (Industrial)."

During the particular period appellant was assistant manager of a hotel occupied to capacity by Navy and Merchant Marine personnel. He was a pre Pearl Harbor father of one child. His wife was pregnant with a second child which was born sometime thereafter. Appellant actually had a hernia but the Selective Service organization had no knowledge of that until at least March 11, 1944. In January 1944 he was advised by his Draft Board that he would have to obtain direct defense employment. His uncle, who was the hotel manager, told appellant that he had better get such job and said he would speak to one of the executives of Union Engineering Corporation, a defense plant, about such employment. On February 8, 1944 Baker was reclassified and placed in 1-A. Around that date a Mr. Mellon of Union Engineering Corporation filled out an employment application card from information given him by Baker who then signed the card. On February 12, the Board received a Form 42-A from Union Engineering Corporation concerning Baker. That was returned to the company as unsatisfactory with request to supply a proper one. On March 6, 1944 the new 42-A was received by the Board. That form is the basis of the first count of the indictment which is the subject of this appeal.[1] Prior to any action by the Board on the second certificate and without any knowledge by the Board of its receipt, Baker had been called for induction, physically examined, found to be suffering from a hernia and rejected. He was then reclassified from 1-A to 4-F.

Baker never worked for Union or received any compensation from that organization. In some fashion not explained his name appeared on Union's employment records. On September 28, 1944 he made a voluntary statement to special agents of the Federal Bureau of Investigation. This detailed his efforts to obtain part-time defense employment. In it he stated that when he signed the personnel card and an application for a Coast Guard pass he "fully expected to be given a part time job by Union Engineering Corporation." Continuing he said that later the Union personnel man told him that the company would send a Form 42-A to the Draft Board requesting his deferment and that he was being carried as an employee. He reiterated that he was not aware of the fact that any money was being paid out in his name or that his time was being carried

[1] The indictment originally contained two counts. The second count was dismissed by the Trial Court at the conclusion of the Government's case.

out on the company's daily time sheets. He said further: "Shortly after I was placed in 1-A by my draft board, I was told by my board to have the Union Engineering Corporation forward a form 42-A to them and I contacted Al Schenck and passed the information along to him and asked that the Union Engineering Corporation send form 42-A to the board. I knew when I told the board that I was employed as a ship painter and I knew when I asked Schenck to have a form 42-A sent to my board that I was violating the Selective Service law. I did these things because I wanted to get an occupational deferment and not to be drafted. The only excuse I can offer is that I expected to go to work for the Union Engineering Corporation some time in the future."

The clause in the above quoted language reading, "I knew when I told the board that I was employed as a ship painter * * *" refers to the second count of the indictment which, as stated, was dismissed. It does not concern us here. There is no evidence that any of the information contained in the 42-A certificates was furnished by the appellant or that either certificate was made by him. The first certificate is not in evidence. The second certificate is sworn to by one Stephen Kovora said in the form to be a Vice President of the Union Engineering Corporation. The Secretary of the Draft Board testified it was received by the Board from Union. Kovora did not testify. That part of Baker's statement above set out seems to refer to the first 42-A certificate. There is nothing in the record to indicate that Schenck had anything to do with the drawing, execution or filing of the second certificate, the one on which the indictment is founded. There is not even any proof that Schenck was an officer or employee of Union Engineering Corporation. Baker testified that he never discussed the making of any application for deferment with Schenck but that he did ask the latter "when he was going to get me the job there." Schenck was not a witness at the trial nor was there any accounting for his absence. While of no special significance since the second Form 42-A was in fact filed with the Board, it should be noted that the Board, if indeed it knew that it had such form, never took any action on it. Meanwhile, the appellant had failed to qualify physically for induction and was placed in 4-F.

We think the case is largely controlled by our decision in United States of America v. Laffman, 3 Cir., 152 F.2d 393, 395. Laffman had been convicted in the District Court under the same sort of an indictment we are presently considering and with the same defense plant involved. Form 42-A in that matter was executed by the then personnel director of the corporation and, as here, contained false statements. That form appeared in the files of the Board but there was no proof as to who sent it and how it got there. Laffman denied any knowledge of it. Schenck appeared and testified in the Laffman trial. In that opinion he is identified as assistant personnel manager. "Laffman 'must have been' with him, he said, when he filled out the form in order to supply the information." There was some information in the form as to Laffman's schooling which seemed to come from Laffman himself and there was a statement from the latter in evidence in that case. Judge Goodrich for the Court then sums up the situation saying:

"Here, then, is the most the prosecution has. A registrant is told by his Draft Board he must get into essential industry or lose deferment. He registers for work, gets a badge at Union. He gets 42-A Forms from the Board, and one comes back to the Board filled out in Union's usual manner and containing information which it is unlikely could have come from anywhere but the defendant. All this is against a background of shenanigan in Union. Defendant's employment number appears on payrolls, though timekeepers employed by Union at the time say they did not put it there. Two of Union's officers appeared to have been convicted for offenses concerned with the Selective Service Act. One cannot but wonder whether the jury may not have confused payroll padding by Union's officers with the alleged offense of Laffman.

"But here is the point. While there is proof from which one may conclude that Laffman may have furnished facts about himself to Union's personnel officer, there is not one word of direct testimony to show that he furnished the false statements detailed above. The only circumstance tending to prove this was Laffman's failure to disclose to the Draft Board, after he got his 2B classification, that he had not been called for work. Non constat that he did not expect daily to be called.

"We think the government case is too thin to rest a conviction upon. Reversed."

Baker was even less connected with the matters and things arising out of the remaining count of the indictment against him than was the defendant in the Laffman prosecution. Obviously he made some effort to obtain part-time direct war work despite his crippled condition. He promptly ruined that good gesture by his gross carelessness. This snarled him up badly with Selective Service but the evidence presented at the trial fails to justify his conviction of the crime charged.

Reversed.