**GRANT et al. v. UNITED STATES.**

No. 4507.

Circuit Court of Appeals, Third Circuit.

April 15, 1931.

Winne & Banta, of Hackensack, N. J., for appellant Grant.

Geo. E. Cutley, of Jersey City, N. J., and Walter G. Winne, of Hackensack, N. J., for appellants.

Phillip Forman, U. S. Atty., and Douglas M. Hicks, Asst. U. S. Atty., both of Trenton, N. J.

Before DAVIS and THOMPSON, Circuit Judges, and JOHNSON, District Judge.

JOHNSON, District Judge.

An information was filed on September 26, 1928, by leave of court against William Sullivan, Hyman Trinkler, Edward Grant, and Joseph Kelly, containing four counts charging all the defendants with possession of intoxicating liquor on September 1, 1928, and the sale of intoxicating liquor on August 31, 1928, and September 1, 1928, and with maintaining a nuisance in September, 1928, at 433 Summit avenue, Jersey City, N. J. Kelly and Sullivan pleaded guilty to the information and were sentenced. Grant and Trinkler pleaded not guilty and were tried before the court and a jury and a verdict of guilty on all four counts was rendered, whereupon sentence was pronounced, from which an appeal was taken to this court. The errors assigned may be classed under three heads: First, the refusal of the trial court to quash the search warrant and suppress the evidence obtained thereby; secondly, the refusal of the court to quash the information in the case; and, thirdly, the refusal of the court to direct a verdict of not guilty.

The District Court was warranted in refusing to quash the search warrant and suppress the evidence and in refusing to quash the information. A more serious question arises on the court's refusal to direct the jury to render a verdict of not guilty on the ground that the evidence was insufficient to convict the defendants.

The evidence is undisputed that the property located at 433 Summit avenue is a three-story frame building known as the Carrell building, on the corner of Sip and Summit avenues, Jersey City, N. J., containing a cigar store on the corner, a barber shop, shoe shining shop, electrical contracting shop, and other tenants occupied the building, besides the restaurant and barroom which are combined in one room. Prohibition agents of the government bought liquor in this barroom on August 31st from Sullivan and in September from Kelly. On the first occasion Grant was present in the restaurant. One of the agents was acquainted with Grant, and, when he approached the entrance to the restaurant, Grant opened the door and admitted him. Grant was seen in the restaurant a number of times but always in his street clothes. During that summer when his family was at the seashore, Grant took his meals at this restaurant when he was in Jersey City. The government's testimony showed that, if any one spoke to Grant, he replied, "Not in the light of an ownership." On one occasion Grant reprimanded Kelly for permitting some one to be in the restaurant who did not belong there, but this room in which the restaurant and barroom were conducted seems to have been the headquarters of a club to which Grant and many others belonged. At another time, Grant opened some packages lying upon the bar, looked at them, and tied them up again. On another occasion he objected to the placing of some beer barrels in the yard which he rented for storage of his pipes; he being an electrical contractor with rented rooms on the floor above the barber shop, having in his employ at times as many as three hundred men. The testimony also shows a bank book used for a savings account of Grant's son left in the possession of Trinkler in the cigar shop and found in the restaurant.

The testimony against Trinkler showed that he ran a cigar store and at the suggestion of one of the agents, took the agents to the back door of the barroom, leaving them there, and soon thereafter the agents were admitted to the saloon. Trinkler had a key to one of the doors that had to be entered before reaching the saloon. A buzzer was connected by a push button running from the cigar store counter to the saloon. Trinkler was never seen in the saloon.

There is no evidence of ownership or connection with the saloon on the part of Grant or Trinkler. All of this evidence is as consistent with innocence as with guilt, and is not sufficient to convict these defendants. Any innocent individual might have done all the things done by Grant and Trinkler. The whole case against these defendants does not rise above suspicion.

What was said by Judge Sanborn in Salinger v. United States (C. C. A.) 23 F. (2d) 48, 52, applies to this case: "Unless there is substantial evidence of facts which exclude every other hypothesis but that of guilt, it is the duty of the trial judge to instruct the jury to return a verdict for the accused, and, where all the evidence is as consistent with innocence as with guilt, it is the

duty of this court to reverse a judgment against the accused." Murphy v. U. S. (C. C. A.) 18 F.(2d) 509, 512; Benn v. U. S. (C. C. A.) 21 F.(2d) 962, 963; United States v. Dibella (C. C. A.) 28 F.(2d) 805; De Gregorio v. U. S. (C. C. A.) 7 F.(2d) 295; Vernon v. U. S. (C. C. A.) 146 F. 121, 123; Union Pacific Coal Co. v. U. S. (C. C. A.) 173 F. 737, 740; Sullivan v. U. S. (C. C. A.) 283 F. 865, 868; Wright v. U. S. (C. C. A.) 227 F. 855, 857; Willsman v. U. S. (C. C. A.) 286 F. 852, 856; Haning v. U. S. (C. C. A.) 21 F.(2d) 508.

Under the facts in this case, the judgment of the District Court must be reversed.