COHEN et al. v. UNITED STATES.

No. 4474.

Circuit Court of Appeals, Third Circuit.

June 17, 1931.

F. M. P. Pearse, of Newark, N. J., and George Wolf, of New York City, for appellants.

Phillip Forman, U. S. Atty., and Douglas M. Hicks, Sp. Asst. U. S. Atty., both of Trenton, N. J., for the United States.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

WOOLLEY, Circuit Judge.

The four appellants were tried and convicted on five counts of an indictment; one, under section 37 of the Criminal Code (18 USCA § 88), charging conspiracy to violate section 215 of the Criminal Code (18 USCA, § 338) and the other charging substantive offenses under the latter section. The assignments when compressed specify two errors; the first that the court erred in refusing to direct a verdict of acquittal because the government had failed to prove the conspiracy alleged in the first count and the schemes to defraud charged in the remaining counts. As no new questions of law are involved in this case we shall not state and discuss the evidence in this long record. We shall, instead, take the government's own abstract of the first count, letter the several allegations and dispose of them alphabetically.

"Count I. Briefly, this count charges conspiracy to violate the provisions of section 215, U. S. Criminal Code (title 18, USCA § 338), in that the appellants together with others (a) planned to open a store in Trenton, New Jersey, under the name of "The Boston Store, Jacob Shopnick, Proprietor", whereas in fact the name Jacob Shopnick was false and fictitious; (b) to issue false and fraudulent financial statements; (c) to issue financial statements, showing certain assets on hand at date of statement, but with the understanding and intent to divide, distribute and return these assets among and to the conspirators so that same would not be available for use in the ordinary course of business; (d) to obtain credit and merchandise on the strength of these statements and to sell and distribute the merchandise and the proceeds of sales among the conspirators;

(e) to secretly remove all assets so that persons or firms selling merchandise could not collect therefor; (f) to abscond from the City of Trenton so that creditors could bring no action to collect; and (g) to use the mails in sending out financial statements letters and other papers relating to The Boston Store."

The overt acts as alleged were the procuring of a lease by Burnstone, a person not in the conspiracy, under a false name, the opening of a bank account by the same person under the same name, and the mailing of financial statements on different dates by Cohen, Chauls and Abraham Goldberg.

The same scheme set forth in the first count as the object of the conspiracy is charged as a substantive offense in each of the remaining four counts, differing only as to dates of mailing statements.

■■ The offense defined by section 215 of the Criminal Code, discussed in Freeman v. United States (C. C. A.) 20 F.(2d) 748, consists of two elements; first, a scheme to defraud and, next, use of the mails to execute the scheme. Both must be proved before conviction can be had. To sustain a charge of conspiracy under section 37 of the Criminal Code to violate section 215 there must be evidence of an agreement or combination between the parties to accomplish by some concerted action the offense there defined with these same two elements. Therefore in considering any one or all of the five counts attention must be directed particularly to these elements in order to determine whether they have been proved or whether the court erred in its charge in respect to either of them.

■ Usually a scheme such as this one, devised or intended to be devised, is proved by evidence of its successful accomplishment. Here the scheme, if one existed, failed, and the fact of devising or intent to devise such a scheme to defraud by use of the mails must be proved by evidence other than that of its successful completion. This may be done, for success of the scheme is not necessary to the commission of the offense, but, as here, it is more difficult to prove and sometimes cannot be proved at all.

■ (a) The beginning of this matter was in appearance innocent enough. It consisted of an agreement between three of the appellants to embark in business in Trenton under the shopworn name "The Boston Store," the money to be furnished by Cohen and Abraham Goldberg, and experience by Chauls. Frank Goldberg, Abraham's nephew, merely trailed along and later was given the position of clerk. Abraham Goldberg refused to put up any money unless it should be handled and the business conducted by someone in whom he trusted. When Jacob Burnstone was selected for that purpose, Abraham Goldberg paid in $6,000 and Cohen $3,000. Cohen and Burnstone then went to Trenton, leased a store property, paid $100 rent in advance, deposited the remaining $8,900 in bank and began doing business, Burnstone, on a small salary, having charge of the financial end. All this was done by Burnstone under the assumed name of "Shopnick." Frank Goldberg also acted under an assumed name. This, of course, had a sinister appearance. These acts, though very suspicious, were not however offenses in themselves and are pertinent only if they bear on subsequent acts.

(b) There was no evidence of an intent to issue false and fraudulent financial statements except the evidence of the statements themselves as they were later issued. The court found at the end of the trial that there was no evidence that these statements were false as to their financial data and so instructed the jury but that the statements were false in the matter of Burnstone's signature under an assumed name and in saying "regular books" were kept. Whatever "regular books" may mean, the books kept were rather casual, but the counts did not charge falsity as to signature of statements or as to the kind of books kept. They charged falsity as to finances or money worth and there was no evidence to sustain those allegations.

(c) Nor was there evidence that the appellants when issuing the statements intended to distribute the money of the business among themselves to the exclusion of creditors. Later they did distribute and keep some of the money. Of this we shall speak presently.

(d) The next two allegations are important. They charge the familiar conspiracy to issue financial statements in order to obtain credit and, on obtaining goods through credit, to sell and distribute the goods and proceeds of sale among themselves; and

(e) secretly to remove all assets so that creditors could not collect. There was not here the usual evidence to support this no longer novel way of doing a fraudulent business. There was evidence that early in the transaction Cohen took away some merchandise but there was also evidence (of doubtful weight) to the effect that it was in whole or in part adjusted in the final transaction

with Abraham Goldberg. Cohen was sick—or said he was—and got out of the business about a month after it started and was paid back his $3,000 contribution before the financial statements were sent out. It might be that one had been sent out before he retired. Of this we cannot be certain. At any rate, that was the last of Cohen.

There was no evidence that Frank Goldberg participated in the conspiracy or in any one of the alleged substantive acts. He was a mere clerk and was convicted without anything against him except the suspicion which inevitably arises against a man who is passing under a false name.

Chauls traveled a part of the time and generally attended to the merchandise part of the business.

Abraham Goldberg, an old man residing in New York, according to the testimony, never saw the store but, trusting his friend Burnstone, left everything in his hands. At the end Abraham Goldberg was paid back the $6,000 he contributed and Chauls received $350. So far as the record shows the debts were small, amounting to a few hundred dollars. These of course should have been paid before any distribution was made to Abraham Goldberg and Chauls, the remaining partners. But this distribution, as it appears on this record, though clearly dishonest, did not amount to the crimes alleged.

(f) Some of the appellants undoubtedly disappeared after the failure and in that sense may have absconded and made pursuit by creditors difficult. But that again was a fact after the alleged criminal event, which, though significant, was not an element of the crime and did not supply proof of the essential element of a scheme which was lacking.

(g) Use of the mails will be discussed under the next question.

The appellants raise the second question by assigning error to the court in admitting evidence of the receipt of statements, letters and envelopes tending to prove (under the last four counts) that they were mailed by the defendants in execution of the alleged scheme.

This question arose on the government's effort to prove that the defendants mailed the statements in execution of the alleged scheme—the second essential or jurisdictional element of the offense defined by section 215—and came up at the trial on the government's tender of evidence that the alleged false statements were received in the mail under circumstances (proved or to be proved) that Chauls furnished Burnstone the figures as to stock on hand and Burnstone, acting for Cohen, Chauls and Abraham Goldberg, prepared and signed the statements and left them in the office at the place from which clerks usually posted the mail and that he saw and knew nothing of them afterward. The attorney for the defendants objected to this tender on the theory that evidence of the receipt of the statements through the mail can not, under our decision in Freeman v. United States (C. C. A.) 20 F.(2d) 748, 749, be admitted until after proof that the defendants had mailed them. There is nothing in the decision to that effect. The learned trial judge, having that decision before him and expressly intending to ignore it, misconceived it yet properly admitted the evidence (R 104), for, under the law of that case as reviewed in Berliner v. United States (C. C. A.) 41 F.(2d) 221, 222, the receipt of a false statement through the mail, while alone not evidence that the defendants mailed it, is very good evidence that it was posted in the mail—one phase of the federal offense—to be followed up by evidence that the defendants mailed it or caused it to be mailed, such evidence, whether direct or circumstantial, to be handled by the court later in the trial on appropriate motions or in its charge to the jury.

On the circumstantial evidence admitted in this case the jury might validly have found within the Freeman decision that the defendants or some one of them had or had not caused the statements to be mailed, yet when the learned trial judge came to instruct the jury on the element of the offense as to mailing he fell into error in not fully charging the law of the Freeman and Berliner Cases, which is law in this circuit.

The judgment is reversed as to all appellants.