## PAUL v. UNITED STATES.
### No. 5532.

Circuit Court of Appeals, Third Circuit. Sept. 20, 1935.

Thomas I. Guerin and James J. Regan, Jr., both of Philadelphia, Pa., for appellant.

Thomas J. Reilly, Asst. U. S. Atty., and Charles D. McAvoy, U. S. Atty., both of Philadelphia, Pa.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

The defendants were charged, in an indictment containing two counts, with forgery in the first count and with "uttering" a forged check in the second count. On the trial Mrs. Reid was acquitted on both counts and Paul was acquitted of forgery in the first count, but was convicted of uttering a forged check in the second count and fined $750. From the judgment, entered on the verdict of guilty, he has appealed.

The instrument involved in this case was a United States government check dated October 15, 1932, and was drawn on the Treasury of the United States for the sum of $472.72 to the order of Norman Castle Reid as a loan against his United States Navy bonus. It was his second bonus loan. The first one for $296 was in 1927. He is and was the husband of the codefendant, Madelyn H. Reid. However, they have lived separate and apart since 1927. He lives in Chester and she in Philadelphia, Pa., with their minor son, Norman Castle Reid, Jr.

He applied the entire first loan of $296 to reduce his arrearages to Mrs. Reid under a support order in her favor made by the Delaware county court in Media, Pa., in December, 1927.

In January, 1932, a further support order in her favor was made against him by the municipal court of Philadelphia. Contempt proceedings had been begun against him for failure to comply with this Philadelphia order, but these proceedings were adjourned on condition that Reid would secure a second loan and pay it on the arrearages of this order. Accordingly, he received a second loan of $472.72, mentioned above; but the check was sent to him at Mrs. Reid's address in Philadelphia and not at his address in Chester. Mrs. Reid mailed the check to him at Chester. He then sent it back to her in Philadelphia bearing his purported indorsement in ink. He testified that he did not indorse it, though he said that he wanted to do the right thing and was willing to give her one-half of the check. On the contrary, she said that it was indorsed by him and that the handwriting was his.

Mrs. Reid, accompanied by Paul, took the check to the Mitten Bank. On the request of the bank, Mrs. Reid indorsed the check as follows: "Mrs. Norman Castle Reid" and "Madelyn H. Reid." But before cashing the check the bank insisted that Paul "add his indorsement for identification of Mrs. Reid, whom he had introduced to the bank," and he did so. She then cashed it and opened an account with the bank with a balance of $366.52. She subsequently drew out of this a check for $60, leaving a balance of $306.52.

The real question in this case is: Who indorsed the check in the name of "Norman Castle Reid"?

The government's handwriting expert, Bert C. Farrar, a man of wide experience, testified that he could not say that the purported indorsement of "Norman Castle Reid" on the check was copied or written by either Mrs. Reid or Paul. Both positively denied that they wrote or indorsed Reid's name on it.

Reid had the check of $472.72 sent to Mrs. Reid's address so that she could be sure that it had been issued. When she later gave the check to Paul, she told him that the indorsement was her husband's. She told the cashier of the Mitten Bank the same thing in Paul's presence before the check was cashed.

On or about January 10, 1932, Reid made complaint to the Treasury Department that his indorsement had been forged on the check. Payment of the check was stopped by the Veterans' Bureau and a substitute check was sent to Reid, and it is not contended that any one, the bank, the government, or any one else, has lost anything by the indorsement.

At this stage and under these circumstances, Paul employed counsel, John De Haven White, Esq., to represent him. He investigated the above facts and advised Reid to withdraw the charges. Counsel for Paul said: "Reid was convinced of the

wisdom and justice of this and endeavored to abandon the charges," but was told by some government official that if he did, he would promptly be prosecuted for perjury.

As above stated, the defendant Paul was convicted of uttering the check for $472.72. The crime of "uttering" a forged writing has often been defined as "offering to another a forged instrument with a knowledge of the falsity of the writing and with the intent to defraud."

The defendant says that the judgment of conviction should be reversed for, at least, two reasons:

1. Because Reid should not have been allowed over objection to testify against his wife and Paul.

At common law the rule is well settled that a husband was not allowed to testify for, or against his wife, and in Pennsylvania this rule has been followed ever since the case of Commonwealth v. Manson, 1 Ashm. (Pa.) 31. This rule has been followed in the federal courts until recently when it was relaxed, in an exhaustive opinion by Mr. Justice Sutherland, to permit a wife to testify *for* her husband, John S. Funk v. United States, 290 U. S. 371, 548 S. Ct. 212, 78 L. Ed. 369, 93 A. L. R. 1136; but this rule has not been so relaxed as to permit a husband to testify *against* his wife. The rule extends to testimony in which the wife is being jointly tried with a codefendant. United States v. Liddy (D. C.) 2 F. (2d) 60. The learned court, accordingly, fell into error in permitting Norman Castle Reid to testify against his wife and Paul. His testimony was very damaging, for without it there was no evidence whatever that his name had been forged.

2. Because the jury found that neither defendant forged the indorsement on the check, and because there is no evidence which shows that Paul knew the indorsement was forged if it was.

The jury, in finding that neither of the defendants forged the indorsement, nullified the effect of the verdict against Paul, unless there was some evidence tending to show that Paul knew the signature of Norman Castle Reid was forged by some one and there is no such evidence. From the time the check was received by Mrs. Reid until it was presented to the Mitten Bank, it was in the possession of Mrs. Reid, Mr. Reid, and Paul. There is no hint that any one other than one of these three wrote or had opportunity to write the name of Nor-

man Castle Reid upon the check. The jury found that neither Mrs. Reid nor Paul did it, and the only other person who, under the evidence, could have done it, or had any interest in doing it, was Reid himself.

Further, Mrs. Reid had the unindorsed check and sent it to her husband for indorsement. What reason could there have been for him to return it to her unindorsed? There is not a word of testimony explaining why he did it, and we see no reasonable and sufficient explanation of it. All the evidence in the case and every reasonable inference to be drawn from the evidence indicate that Reid himself indorsed this check, just as he did the former check for $296, in order to apply it to the order for the support of his wife and son, as he had promised to do, so as to prevent further contempt proceedings. Reid had every reason to carry out his agreement and apply this check on the arrearages of $1,952, in accordance with his agreement, as he had done before with his other check.

Mrs. Reid stated twice in the presence of Paul, once before they went to the bank and once at the bank in the presence of the cashier, that Reid had indorsed the check, and there is not a scrap of evidence that Paul did not believe this to be the fact. The only reasonable and logical inference is that he did believe this was the fact, for otherwise he would not have indorsed the check personally at the request of the bank, for he would full well have known that the forgery would soon be discovered and that, as a lawyer, the consequences to him would be disastrous. Paul, as her counsel, took Mrs. Reid to the bank. He had told the bank beforehand that he would bring her to open an account with this check.

There is not a word in the evidence that Paul thought that any one would be defrauded and nobody was. As a matter of law, the facts before us in this case are insufficient to support the charge of "uttering" a forged check.

Paul has a good reputation. There was no testimony that he had ever been unethical in his practice. In the case of Yusem v. United States, 8 F.(2d) 6, 8, we said: " 'Unless there is substantial evidence of facts which exclude every other hypothesis but that of guilt, it is the duty of the trial court to instruct the jury to return a verdict for the accused; and where all the substantial evidence is as consistent with innocence as with guilt, it is the duty of the appellate court to reverse a judgment

of conviction.' Hart v. United States, 84 F. 799, 808, 28 C. C. A. 612; Union Pacific Coal Co. v. United States, 173 F. 737, 740, 97 C. C. A. 578; Wright v. United States, 227 F. 855, 857, 142 C. C. A. 379; Joseph Wiener et al. v. United States (C. C. A.) 282 F. 799, 801."

At the conclusion of the government's case, Paul moved for binding instructions of "not guilty" on each of the two counts. This was denied, and an exception was noted. Again at the conclusion of the case, Paul moved for a direction of a verdict of "not guilty," and this motion was likewise denied. In denying these motions the learned court erred.

The evidence is insufficient to support the verdict, and the judgment is reversed.