## UNITED STATES v. LAFFMAN.

### No. 8952.

Circuit Court of Appeals, Third Circuit.

Argued Nov. 8, 1945.

Decided Nov. 29, 1945.

---

[5] See note 4.

[6] Dobson v. Commissioner, 320 U.S. 489, 502, 64 S.Ct. 239, 88 L.Ed. 248.

[7] Heiner v. Tindle, 276 U.S. 582, 48 S. Ct. 326, 72 L.Ed. 714.

[8] See note 7.

Raymond F. Brady, of Newark, N. J. (Hammill, Schnitzer & Reilly, of Jersey City, N. J., on the brief), for appellant.

Vincent E. Hull, of Newark, N. J. (Edgar H. Rossbach, U. S. Atty., of Newark, N. J., on the brief), for appellee.

Before MARIS, GOODRICH, and O'CONNELL, Circuit Judges.

GOODRICH, Circuit Judge.

Henry J. Laffman was convicted in the District Court under an indictment charging him with having sent and caused to be sent to his Local (Selective Service) Board a false certification of his occupation upon Form 42-A (50 U.S.C.A.Appendix § 311). The one ground of appeal is the sufficiency of the evidence to sustain the conviction. Direct evidence that appellant either made out or sent a false affidavit is lacking. The conviction must rest upon the circumstances surrounding the act which, if proved, would constitute the offense. The prosecution expresses agreement with the legal proposition urged by the appellant and recently reiterated by this Court that "In order to justify a conviction of crime on circumstantial evidence it is necessary that the directly proven circumstances be such as to exclude every reasonable hypothesis but that of guilt." United States v. Russo, 3 Cir., 1941, 123 F.2d 420, 423. Accord: United States v. Tatcher, 3 Cir., 1942, 131 F.2d 1002.

The United States contends that it has met that burden; the appellant claims that it has not. The evidence showing the circumstances presents few if any controverted questions of fact. Does it establish the offense charged within the test of the above cited decisions?

It appears that Laffman registered in October 1940, filed his first questionnaire May 10, 1941 and thereafter, on May 15, 1941, was classified in class 3 as a pre Pearl Harbor father. His answer to occupational questionnaire, on June 22, 1942, showed his occupation to be that of barber. In January 1944 he received a notice directing him to appear before the Board at a forthcoming meeting. This notice was sent by the Board in the scope of its recommendation of all class 3 registrants. The Board's records show that Laffman appeared on January 20, 1944, and there is also testimony that a week later he discussed his draft status further with Robert D. Thomsen, chief clerk of the Board.

On or about February 26, 1944, a 42-A Form was received by the Board concerning Laffman's employment by the Union Engineering Corporation. The affidavit was not executed by Laffman, but by one Bradley, at the time personnel director of the corporation. It contained statements which were false, notably that Laffman was employed by Union as a journeyman painter, painting ships berthed in the Port of New York, that he had entered upon the job February 3, 1944, that his average weekly rate of pay was $72, and that the average hours worked per week was 60.

This Form appeared in the files of the Board. Who sent it and how it got there we do not know. Both Laffman and the prosecution say that Laffman, while he applied for a job at Union and received a number and a Coast Guard pass, never worked a day there nor drew a cent of pay. Laffman denies any knowledge of the 42-A Form. The government proof of this knowledge is the core of the case. Let us look at it, taking it all as true as we must after the verdict.

Robert D. Thomsen, at the time in question chief clerk for Local Board No. 4, told of an interview with defendant in the Board office late in January 1944. He gave Laffman several 42-A Forms, the latter having told Thomsen that the firm which was employing him did not have any. Later a 42-A Form about Laffman came in. Mr. Thomsen did not say how.

Alfred Schenck, at the time in question assistant personnel manager of Union, identified the particular 42-A Form as one he had filled out by the phrases he customarily

used. He said he filled out these forms by getting what information was necessary from the employee and then getting Bradley or some other company officer to sign it. Laffman "must have been" with him, he said, when he filled out the form in order to supply the information. In comment, it should be observed that the 42-A Form contains a statement about defendant's schooling. While his employment card and social security withholding card contain information as to his family situation they do not state his educational experience. The jury could pertinently ask where the *personal information contained in the 42-A Form could have come from, if not from Laffman himself.* The accuracy of the statement about defendant's education was not denied.

The United States points also to a statement executed by defendant stating that he was employed as a barber. It bears date of September 25, 1944. We think it proves nothing to support the theory of the prosecution.

 Finally there is the statement of an FBI investigator that the defendant, in the course of an interview, changed his statement about employment at Union, first stating he worked there a few weeks, afterward declaring that he never worked there. Laffman, upon the stand, endeavored to explain the reasons for his change of front. This testimony only establishes what Laffman now claims; that he never worked at Union. It also tends to discredit Laffman's testimony, but the prosecution must, of course, prevail upon the strength of its own case, not the weakness of that of defendant.

■ Here, then, is the most the prosecution has. A registrant is told by his Draft Board he must get into essential industry or lose deferment. He registers for work, gets a badge at Union. He gets 42-A Forms from the Board, and one comes back to the Board filled out in Union's usual manner and containing information which it is unlikely could have come from anywhere but the defendant. All this is against a background of shenanigan in Union. Defendant's employment number appears on payrolls, though timekeepers employed by Union at the time say they did not put it there. Two of Union's officers appear to have been convicted for offenses concerned with the Selective Service Act. One cannot but wonder whether the jury

may not have confused payroll padding by Union's officers with the alleged offense of Laffman.

But here is the point. While there is proof from which one may conclude that Laffman may have furnished facts about himself to Union's personnel officer, there is not one word of direct testimony to show that he furnished the false statements detailed above. The only circumstance tending to prove this was Laffman's failure to disclose to the Draft Board, after he got his 2B classification, that he had not been called for work. Non constat that he did not expect daily to be called.

We think the government case is too thin to rest a conviction upon. Reversed.