### UNITED STATES v. GASOMISER CORPORATION et al.

Criminal Action No. 579.

District Court, D. Delaware.
Nov. 21, 1947.

Rehearing Denied Feb. 9, 1948.

---

[32] See cases in Note 31.

714

John J. Morris, Jr., U. S. Atty., and Francis A. Reardon, Asst. U. S. Atty., both of Wilmington, Del., and E. Russel Kelly, Sp. Asst. U. S. Atty., and James J. Duncan, Atty., Securities & Exchange Commission, both of Washington, D. C., for plaintiff.

David B. Coxe, Jr., of Wilmington, Del., for defendant Gasomiser Corporation.

H. Albert Young, of Wilmington, Del., for defendant Joseph E. Farrell.

Richard F. Corroon (Southerland, Berl & Potter) of Wilmington, Del., for defendant Gurney Thompson.

RODNEY, District Judge.

The two individual defendants and the corporate defendant were each charged in five counts of the indictment with violations of the fraud provision of the Securities Act of 1933, § 17(a) (1), 15 U.S.C.A. § 77q(a)(1), and in seven counts of the indictment with violations of the Mail Fraud Statute, 18 U.S.C.A. § 338. Each defendant moved under Rule 29(b) of the Federal Rules of Criminal Procedure [1] at the close of all the evidence for a judgment of acquittal. Decision on the motions was reserved and the case was submitted to the jury in accordance with the aforesaid rule. The jury returned a verdict of guilty as to all three defendants on all twelve counts of the indictment.

Subsequent to the return of the verdict by the jury, each of the motions for judgment of acquittal was duly renewed and included, in the alternative, a motion for a new trial. The question before the court at this time is the disposition of these motions.

The determination of the pending motions and disposition of the case has been unduly prolonged. This was not only from a desire to review in detail the voluminous evidence introduced at the trial but because after the case was concluded it seemed that a pertinent and controlling principle of law, as to which there was some conflict, might be authoritatively determined.

The case involved much testimony of a circumstantial nature. The rule adopted by the Circuit Court of Appeals of this (Third) circuit is "To justify conviction of crime where the evidence relied upon is circumstantial in nature the evidence must be such as to exclude every reasonable hypothesis but that of guilt," [2] 131 F.2d 1003, or, as otherwise expressed, "Unless there is substantial evidence of facts which exclude every other hypothesis but that of guilt, it is the duty of the trial court to instruct the jury to return a verdict for the accused."[3] 79 F.2d 563.

In Curley v. United States, 1947, 81 U.S.App. D.C. 389, 160 F.2d 229, the Court of Appeals of the District of Columbia adopted a view as to the weight and character of circumstantial evidence necessary to justify a conviction which was at variance with the holding of the Third Circuit as above set out. After the hearing in the present case, review of the Curley case was sought by certiorari from the United States Supreme Court and it seemed that the differences might be considered and the final rule established. Certiorari having been denied by the Supreme Court [4] and rehearing denied,[5] the present matter must be determined in the light of the foregoing rule of the Third Circuit.

The rule hereinbefore mentioned does not apply when the testimony is direct and positive; it has application only when the evidence is of a circumstantial nature. The preliminary matter to be determined, then, is the nature of the testimony involved in the present case. It must be determined whether the material and essential evidence

---

[1] 18 U.S.C.A. following section 687.

[2] United States v. Tatcher, 131 F.2d 1003, and cases subsequently cited, 7 F.R.D. 718.

[3] Paul v. United States, 79 F.2d 561, 563, and cases subsequently cited, 7 F. R.D. 718.

[4] 331 U.S. 837, 67 S.Ct. 1511.

[5] 331 U.S. 869, 67 S.Ct. 1729.

in the case is of such a direct and positive nature as to exclude application of the quoted rule, or whether the material and essential testimony is so closely and solely related to circumstantial evidence as to make the quoted rule have application.

■■ The two crimes with which the defendants have been charged each contain two essential elements: (1) A scheme to defraud, and (2) in the case of the Mail Fraud Statute, a use of the mails in executing or attempting to execute said scheme, and in the case of the Securities Act of 1933, the employment of such scheme in the sale of securities by use of the mails. Graham v. United States, 10 Cir., 1941, 120 F.2d 543, 544; Cohen v. United States, 3 Cir., 1931, 50 F.2d 819, 820; Harper v. United States, 8 Cir., 1944, 143 F.2d 795, 801; Freeman v. United States, 3 Cir., 1927, 20 F.2d 748, 749.

There has been introduced at the trial direct evidence of a use of the mails which, assuming a scheme to defraud to exist, is sufficient to satisfy the second essential element of each of the crimes. Attention therefore will be directed to the first essential element of both crimes, viz., a scheme to defraud.

■ The indictment charges that the defendants devised and intended to devise a scheme to defraud. A fraudulent intent is necessary to sustain a charge of a scheme to defraud. Rice v. United States, 10 Cir., 1945, 149 F.2d 601, 603. As pointed out by the court in Yusem v. United States, 3 Cir., 1925, 8 F.2d 6, 8, where the defendant was charged with violation of the Mail Fraud Statute, an untrue statement, a false representation, does not amount to fraud unless it be made with fraudulent intent. And in Rice v. United States, 10 Cir., 1945, 149 F.2d 601, 603, where the defendant was charged with violation of the same statutes as here involved, the court said:

"Fraudulent intent * * * is often not susceptible of proof by direct evidence. More frequently than otherwise, it must be inferred from a series of acts, occurrences, and circumstances." [6]

So seems to be the situation in the case at bar. It is apparent from the evidence that the individual defendants did reach some kind of an agreement and did commence an enterprise pursuant to the agreement. There is, however, no direct evidence that such agreement constituted a scheme to defraud. The government has attempted to prove the existence of a scheme to defraud by proving various and numerous acts and circumstances from which such scheme must be inferred. No direct evidence has been offered to show such a scheme.

The individual defendants did enter into a written agreement of August 14, 1941, entitled a "Statement of Conception of Invention." This agreement, however, is not relied upon as the inception of the scheme. Indeed, the indictment sets forth such agreement as one of the circumstances showing the existence of a prior scheme, and at the trial the government so treated it. And there is nothing in the agreement itself to give rise to an inference of fraud. Hence, it is relied upon by the government only as one element which, with others, it is contended raises an inference of fraudulent intent.

The evidence indicates that the defendant, Farrell, has been employed in mechanics and engineering for most of his 58 years. He has held positions as an officer and engineer of various apparently reputable companies. He has also invented various devices in the past, one of which was a crude oil carburetor on which he received a patent in 1937.

According to the evidence, the defendant, Thompson, approached Farrell in 1941 at the latter's home for the purpose of ascertaining if Farrell could develop a fuel oil carburetor that could be used on stationary engines. Farrell thought such development possible and soon thereafter he and Thompson entered into the aforesaid agreement of August 14, 1941, whereby it was provided that they would be co-owners of the device; that Farrell would provide his engineering experience and skill to de-

---

[6] See also Aiken v. United States, 4 Cir., 1939, 108 F.2d 182, 183, where the court points out in similar language the necessity of proving fraudulent intent by seemingly isolated acts and instances aptly designated as badges of fraud.

velop the device; that Thompson would finance the venture; and that a corporation would be formed.

A corporation (the defendant corporation) was formed through the advice and assistance of a then-prominent and highly reputable attorney, who became a stockholder, director and president of the corporation. The individual defendants and the attorney by agreement divided approximately 115,000 of the corporation's authorized capital stock of 200,000 shares among themselves, each receiving an equal number of shares, the defendants apparently because they were co-owners of the device and the attorney in payment for his services. A corporate account was opened and monies were deposited therein from both pre-incorporation and post-incorporation subscriptions obtained by Thompson. It appears that the venture soon expanded with the desire to develop the device for operation upon automobiles and the original estimate of the cost of development was therefore somewhat increased.

Soon thereafter, Thompson became dissatisfied with the venture and resigned as treasurer and director of the corporation. The evidence indicates that the reasons for his dissatisfaction were the increased costs resulting from the development of the device for automobiles and an increasing hostility and dissension between Farrell and himself. It appears that this dissension never ceased. After Thompson's resignation, he and Farrell saw very little of each other, although Thompson did keep in constant touch with the attorney, who kept all of the corporate records and performed most of the necessary corporate functions.

The corporation, through Farrell, who was working as its engineer, employed patent attorneys in Washington and filed an application for Letters Patent on the device. The evidence indicates that this application was granted in part by the Patent Office in 1944, although there was apparently a rejection of the rest of the application or of another application in 1946. A garage in Wilmington was rented for the purpose of developing and displaying the device. Farrell received $100 weekly in his capacity as engineer, and when the corporate funds were soon depleted, the attorney continued to pay this weekly salary from his own funds. No unissued corporate stock was sold to raise funds because the attorney advised against it, although over the strenuous objections of Farrell. The attorney also advanced funds at least once for the payment of patent attorneys' fees and the purchase of an engine.

The evidence indicates that Farrell spent most of his time subsequent to 1941 working on the development of the device. A great deal of his weekly salaries was expended for development purposes. He traveled to various cities to contact reputable companies concerning foreign rights and the commercial development and production of the device. He spent four or five months in Baltimore working on the device at the plant of a company which had contracted with the defendant corporation to produce the device. The president of the Baltimore company, a man of wide experience in mechanics, engineering and production, showed considerable interest in the device and advanced funds to purchase material for its production. While in Baltimore, Farrell also helped in the work of the Baltimore company and was paid a weekly salary of $125 by that company. During that time or a portion thereof he received no salary from the defendant corporation or the attorney. He was employed by the Baltimore company to develop his invention and to help with the company work. There is no indication that he attempted to profit unduly from any of the funds he ever received, except through the further development of the device with those funds. Nothing in the evidence indicates that he lived sumptuously or spent the funds with any degree of prodigality.

The device was displayed to numerous representatives of the government and representatives of various reputable companies. There is ample evidence to show, at least, some substantial interest in the device and no evidence that it was considered so inherently foolhardy as to preclude investigation. In these numerous contacts there is no indication that Farrell's purpose was the sale of stock and this is accentuated by the fact that during the entire period little, if any, of his own stock was sold to anyone whose interest he sought to enlist. Far-

rell contacted reputable persons in Washington and even put the device on display in a garage in that city. During all the period he kept the attorney fully informed as to the work being done and placed the attorney in contact with certain of the reputable persons with whom he had discussed the development and production of the device.

The numerous letters written to the attorney by Farrell indicate that at various times Farrell was enthusiastic about the development of the device and at other times he was depressed about its development. The government contends that the letters showing enthusiasm were sent for the purpose of insuring the continuation of the weekly payments by the attorney. But it is just as reasonable to assume that all of the letters reflect the natural changing attitudes of a typical inventor. This view is substantiated by the fact that letters expressing dejection were sent to the attorney. Their purpose certainly was not to insure further payments by the attorney. Some of the letters also evidence Farrell's distrust and dislike of Thompson.

It is true that a substantial amount of corporate stock which had been issued to the individual defendants, chiefly Thompson, was sold to various persons, mainly in the State of Delaware. The evidence is contradictory in most instances as to just what representations were made to the various purchasers. Undoubtedly there was, at least, some "puffing." While the investors made their purchases of stock for various reasons the evidence would indicate that some did so because of the belief that the device had been patented; that others purchased stock because of the demonstrations of the device upon a stationary engine that they had witnessed; that others believed that the device was about to be produced upon a commercial basis and that royalties might be expected from foreign rights. Some, at least, were unduly impressed with the personality of the officers of the company. The defendants contend there was a basis for any representation made. The representations herein specifically mentioned and any others that were made, as well as the consequent sales, were all circumstances entering into the contemplation of the alleged scheme to defraud and to be considered, as such, by the jury.

Most of the stock that was sold was stock belonging to the defendant, Thompson. Out of the 38,000 odd shares received by Farrell, he still holds some 29,000 or 30,-000 shares. What stock he sold was largely either solicited by the purchasers themselves or was given in payment for a loan which Farrell received to meet a mortgage payment on his house.

There is evidence that Thompson sold most of his stock to stock salesmen or brokers in order to obtain funds for purposes advised by his physician. It is clear that the stock was sold at various and sundry prices, sometimes to the same purchaser. Thompson made some of these sales and was present at others. The fact of the sales was known to the attorney, who was president of the corporation, but no objection to the sales was made by him. Indeed, he himself purchased some of Thompson's stock.

The evidence indicates that the device has never been developed sufficiently to warrant commercial production. Whether the device has such commercial possibilities that its development is at all feasible is not here material except upon the question of intent to defraud.

Obviously the government's case with respect to the scheme to defraud is based upon circumstantial evidence. There has been an attempt to prove that the existence of such a scheme "is fairly and reasonably to be inferred from other facts proved in the case."[7] All of these various facts and circumstances, so the government contends, lead to but one conclusion, a scheme to defraud.

No direct evidence of the existence of a scheme to defraud has been offered. Naturally the very nature of the subject ordinarily precludes such evidence. Secrecy usually attends such crimes, and guilt must be inferred from various acts and circumstances of which direct evidence is offered.

---

[7] State v. Carter, 1 Houst.Cr.Cas. (Del.) 402, 410 (1873); see also 1 Wigmore (3d Ed.) Sec. 25, p. 398.

718

That there may be direct evidence of circumstances from which guilt may be inferred does not, however, change the nature of the case from that of one based upon circumstantial evidence.

While the circumstances may be proven by direct evidence, yet when those circumstances are solely relied upon as the basis of conviction the direct proof of the circumstances does not change the result that the ultimate fact, the intent to defraud, has been proven by circumstantial evidence.

■ This then being a criminal case based upon circumstantial evidence, in order for the motions of the defendants to be denied guilt must be the only reasonable hypothesis from such evidence. If there is any other reasonable hypothesis, although admittedly guilt may also be a reasonable hypothesis, then the defendants are entitled to judgments of acquittal. In this circuit, it is clear that "In order to justify a conviction of crime on circumstantial evidence it is necessary that the directly proven circumstances be such as to exclude every reasonable hypothesis but that of guilt," United States v. Laffman, 3 Cir., 1945, 152 F.2d 393, 394; United States v. Tatcher, 3 Cir., 1942, 131 F.2d 1002, 1003; United States v. Russo, 3 Cir., 1941, 123 F.2d 420, 423, or, as it has been otherwise stated by many courts in this circuit, "Unless there is substantial evidence of facts which exclude every other hypothesis but that of guilt, it is the duty of the trial court to instruct the jury to return a verdict for the accused." Paul v. United States, 3 Cir., 1935, 79 F.2d 561, 563; Nicola v. United States, 3 Cir., 1934, 72 F.2d 780, 786; Grant v. United States, 3 Cir., 1931, 49 F.2d 118, 119; Graceffo v. United States, 3 Cir., 1931, 46 F.2d 852, 853; Ridenour v. United States, 3 Cir., 1926, 14 F.2d 888, 892; Yusem v. United States, 3 Cir., 1925, 8 F.2d 6, 8; Wiener v. United States, 3 Cir., 1922, 282 F. 799, 801. The presumption of innocence with which an accused stands before the bar of justice is not overcome by circumstantial evidence which offers a reasonable hypothesis other than guilt.

Wright v. United States, 8 Cir., 1915, 227 F. 855, 857; Union Pacific Coal Co. v. United States, 8 Cir., 1909, 173 F. 737, 740.

It is quite immaterial as to whether this court does or does not entirely agree with the verdict of guilty reached by the jury. There are only two questions here involved. The first is as to whether the verdict of the jury must have been based upon circumstantial evidence. I have concluded that circumstantial evidence did form the basis of the case upon which the verdict was founded. The rule then requires that "Where the evidence relied upon is circumstantial in nature the evidence must be such as to exclude every reasonable hypothesis but that of guilt." United States v. Tatcher, 3 Cir., 131 F.2d 1003.

■ While one might agree with the verdict of the jury as evidencing the adoption of one or more reasonable hypotheses and believe that the guilt may have been established beyond a reasonable doubt, yet in view of the evidence I cannot say that, even assuming the truth of all the circumstantial evidence, the verdict of guilt was based upon the *only* reasonable hypothesis or, in the words of the rule, that there is excluded every reasonable hypothesis but that of guilt.

I cannot say that a juror, individually or collectively, could not have arrived at a different conclusion.

I must, therefore, grant the motions of each of the defendants for judgments of acquittal.

■ This case clearly shows the value of the procedure preserved by Rule 29(b) of the Rules of Criminal Procedure. Under such rule the court may allow a jury to pass upon the facts with possible affirmative verdict of not guilty for a defendant and at the same time, after proper reservation, maintain its jurisdiction to direct in a proper case an acquittal as a matter of law.

On Petition for Rehearing.

Subsequent to the filing of the court's opinion, which indicated that the defendants' motions for judgments of acquittal[1]

---

[1] Under the new Federal Rules of Criminal Procedure, 18 U.S.C.A. following section 687, motions for directed verdict are abolished and are replaced by motions for judgments of acquittal. Rule 29(a).

would be granted, but prior to the entry of an order granting the motions, the government petitioned for a rehearing upon such motions. It may be unnecessary to decide whether the government may petition for a rehearing under such circumstances in a criminal case, since it appears that the rehearing itself must be denied.

This court's decision was based upon a widely recognized rule which has long prevailed in the Third Circuit. Such rule, which is designated as the "circumstantial evidence rule," has usually been stated in one of two ways: Either that (1) "To justify conviction of crime where the evidence relied upon is circumstantial in nature, the evidence must be such as to exclude every reasonable hypothesis but that of guilt," or (2) "Unless there is substantial evidence of facts which exclude every other hypothesis but that of guilt, it is the duty of the trial court to instruct the jury to return a verdict for the accused." Recognizing the applicability of this rule to the instant case, it was determined that there was a reasonable hypothesis other than guilt and that the defendants' motions for judgments of acquittal should therefore be granted.

The government has advanced substantially three reasons in support of its petition. They are, first, that the rule mentioned above is no longer in effect either in this Third Circuit or under the decisions of the Supreme Court of the United States; second, that assuming the rule is still in effect, this court has misapplied it by not limiting its consideration of the evidence to the government's evidence alone, by not taking the evidence in the light most favorable to the government, and by not drawing all possible inferences in favor of the government; and third, that the case is not one based solely upon circumstantial evidence.

With respect to the first reason, the government urges that the applicable rule in the instant case is no longer the "circumstantial evidence rule" but rather the "substantial evidence rule," which allegedly declares that an accused is not entitled to a directed judgment of acquittal even where the evidence is entirely of a circumstantial nature where there is substantial evidence from which a reasonable man might infer a finding of guilt. Many cases are cited in support of this contention, but none seem to make any such holding in a case where the evidence is purely circumstantial and only one has any materiality to the instant case.

Because of the possible misconception of the situations in which the "circumstantial evidence rule" has application, a brief reference to certain of the cases cited by the government in support of its first reason may be of some value. In none of the cited cases decided by the Supreme Court of the United States does it appear that the question here involved was raised. In the Glasser and Socony-Vacuum cases,[2] the question was whether there was sufficient evidence to support the verdict of the jury. Defendant Roth in the Glasser case and defendant McElroy in the Socony-Vacuum case each raised only one issue, namely, whether there was evidence sufficient to sustain his conviction. The court in each case specifically pointed out that such issue was the only one to be decided and found in each case that there was substantial evidence to sustain the conviction. The duty upon the trial court to direct judgment of acquittal was not a question in either case. The Gorin and Pierce cases[3] are even more remote. The issue in each of those cases was whether the court or the jury should determine whether the acts of the defendants came "within the ambit of the statutes" there involved. It was held that the jury must determine the question, the duty of the court being to give the jury the tests to guide its determination. The quotation which the government cites from the Pierce case merely states the truism that it is the duty of the jury to determine guilt beyond a reasonable doubt.

In none of the above cases is it clear that the case or any particular element of it was based solely upon circumstantial evidence.

[2] Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680; United States v. Socony-Vacuum Oil Co., 1940, 310 U.S. 150, 254, 60 S.Ct. 811, 84 L.Ed. 1129.

[3] Gorin v. United States, 1941, 312 U.S. 19, 32, 33, 61 S.Ct. 429, 436, 85 L.Ed. 488; Pierce v. United States, 1920, 252 U.S. 239, 251, 252, 40 S.Ct. 205, 64 L. Ed. 542.

The other Supreme Court cases cited by the government seem likewise inapplicable. It might also be pointed out that the latest Supreme Court case cited by the government was decided in 1942. Since that date the "circumstantial evidence rule" has been recognized and accepted at least three times by the Third Circuit Court of Appeals.[4] The "circumstantial evidence rule" would seem to be still entitled to recognition in the Third Circuit unaffected by any decisions of the Supreme Court.

The government, however, cites two Third Circuit cases which it urges have overthrown such rule. The first case, United States v. Reginelli, 3 Cir., 1943, 133 F.2d 595, 599, actually presents an excellent illustration of the recognition and application of the rule. There only the defendant's purpose in bringing about the woman's transportation needed to be inferred. The court, after noting the rule and reviewing the evidence, used the following language:

"In the circumstances thus shown, the trial court would not have been warranted in declaring, as a matter of law, that a lawful purpose * * * was as inferable from the evidence in the case as an immoral purpose. * * * so far as any inference of legitimate purpose on the defendant's part was to be drawn from the evidence, it was for the jury to draw * * *."

In other words, looking at all of the government's evidence, and in the light most favorable to the government, and accepting it as true, there was no reasonable hypothesis other than guilt, and the court could not, therefore, direct a judgment of acquittal. Consequently, if there was to be drawn any inference other than one of guilt, it was for the jury to draw. A more apposite case could not have been found.

The other case cited by the prosecution, United States v. Brandenburg, 3 Cir., 1946, 155 F.2d 110, fails to support its contention. In the cited case, the question here involved was not raised by either party and was not considered by the court. The only question involved was whether there was sufficient evidence to sustain the conviction.

It follows that the first reason in support of the government's petition must be rejected.

With respect to the second reason, it should first be stated that in applying the "circumstantial evidence rule" the court accepts all of the government's evidence as true and looks at it in the light most favorable to the government. But the court does not draw *all possible inferences* in favor of the government; it rather draws *all inferences reasonably deducible* from the evidence taken in the light most favorable to the government. See Yoffe v. United States, 1 Cir., 1946, 153 F.2d 570, 573.

It is the government's position that the court must consider only the government's evidence on a motion for judgment of acquittal. If this be true, then there is no apparent logic in allowing such a motion at the close of all the evidence. If such a motion is made and denied at the close of the government's case, under the government's view there could be no sound reason for making such a motion again at the close of all the evidence. The fallacy in the government's position is obvious. Furthermore, the government cites no specific case in support of this contention, except perhaps Robinson v. United States, 6 Cir., 1944, 144 F.2d 392, 401, which does state that contradictory evidence is not to be considered on a motion for a directed verdict. But the contradictory evidence which the cited case has reference to is the evidence on both sides, each of which contradicts the other. In addition, the cited case relies for its statement upon three civil cases, none of which clearly make such a holding, even with respect to a civil case. No cases have been found which support the government's position.

Contrary to the government's contention, the cases relied upon in the former opinion do not hold that only the government's evidence is to be considered in applying the rule. In only the Tatcher case[5] does it ap-

---

[4] United States v. Laffman, 3 Cir., 1945, 152 F.2d 393, 394; United States v. Reginelli, 3 Cir., 1943, 133 F.2d 595, 598; United States v. Tatcher, 3 Cir., 1942, 131 F.2d 1002, 1003.

[5] United States v. Tatcher, 3 Cir., 1942, 131 F.2d 1002.

pear that the government's evidence was alone considered, but in that case there was no other evidence. At the trial, the defendant had demurred to the evidence at the close of the government's case and the government joined in such demurrer. The demurrer was overruled, the defendant found guilty by the court and an appeal was taken from such finding. See United States v. Tatcher, D.C., E.D.Pa.1942, 43 F.Supp. 659. Consequently, there was no evidence that could be considered except that of the government.

A brief reference to the other cases relied upon in the former opinion shows clearly that no such limitation is placed upon the court in its application of the rule. E. g., United States v. Russo, 3 Cir., 1941, 123 F.2d 420, 421; Paul v. United States, 3 Cir., 1935, 79 F.2d 561; Nicola v. United States, 3 Cir., 1934, 72 F.2d 780; Wiener v. United States, 3 Cir., 1922, 282 F. 799. The government's second reason must also fail.

■ With respect to the third reason, very little need be said. The instant case clearly presented a situation to which the "circumstantial evidence rule" was applicable. It might be pointed out, however, that more than an intent to defraud needed to be inferred in the instant case. There was no direct evidence of a scheme and hence the complete first essential element of the crime, viz., the scheme to defraud, had to be proved, if at all, by circumstantial evidence.

■ In view of the government's position as to the "circumstantial evidence rule," a brief summary of its application may be helpful. First, it applies only to criminal cases in which the government seeks to prove at least one element of the crime charged by purely circumstantial evidence, and it applies only to those elements which are sought to be proved by such evidence. That the circumstances are directly proved does not change the character of the evidence; it is still circumstantial evidence. Second, the rule is not applicable if there is both direct and circumstantial evidence having bearing upon the particular element or elements of the crime. Third, the rule is applied only upon a motion for a judgment of acquittal made

either at the close of the government's case or at the close of all the evidence. At this point it should be made clear that the rule was applied in the instant case under such circumstances. The conviction of the defendants by the jury was not being reviewed. This court was merely acting upon motions for judgments of acquittal made at the close of all the evidence and on which decision had been reserved under the liberal provisions of Rule 29(b) of the Federal Rules of Criminal Procedure.

■ There has heretofore been discussed the light in which the evidence must be viewed in applying the rule, and nothing need be reiterated on that point. It should be made clear, however, that while all the government's evidence is accepted as true, the court may very well look to the defense evidence for the purpose of ascertaining a reasonable hypothesis other than guilt. In many cases, a motion for judgment of acquittal made at the close of the government's case will be denied because there is no apparent reasonable hypothesis from the circumstances other than that of guilt. Indeed, in most cases any hypothesis other than guilt can only be shown in defense. The government usually is interested solely in presenting its own case, and inferences other than guilt can only be shown by facts at variance with the hypothesis of the government itself. If the rule that "unless there is substantial evidence of facts which exclude every other hypothesis but that of guilt, it is the duty of the trial court to instruct the jury to return a verdict for the accused" has merit, then the rule must be invoked at a time when it may have value. After the defense evidence has been presented, therefore, such a motion may be granted for the reason that the defense evidence has presented a reasonable hypothesis other than guilt which may be inferred from all of the government's evidence. Whenever such a hypothesis exists, the case should not be allowed to go to the jury, because any inference drawn by the jury would be no more than the jury's determination as to which of two reasonable hypotheses be the correct one, and defendants in criminal cases based upon circumstantial evidence alone are entitled to have their presumption of innocence sustained as

a matter of law when the inference of innocence is a reasonable one under the evidence.

The petition for rehearing is denied.