**UNITED STATES of America**

v.

**Charles R. O'DAY and Sarah H. O'Day.**

**Crim. A. No. 1242.**

United States District Court
D. Delaware.

July 22, 1960.

Ralph Keil, Asst. U. S. Atty., for Dist. Delaware, Wilmington, Del., and Joseph S. Mangano, Sp. Asst. U. S. Atty., I. R. S., Office of Regional Counsel, Philadelphia, Pa., for plaintiff.

Robert W. Tunnell and John E. Messick (of Tunnell & Raysor), Georgetown, Del., for defendants.

STEEL, District Judge.

Defendants, husband and wife, were found guilty by a jury of having violated § 145(b) of the I.R.C. of 1939, 26 U.S.C.A. § 145(b), by willfully attempting to evade and defeat the Federal income tax imposed upon them for the year 1953.[1] A motion for judgment of acquittal made at the close of all the evidence, was denied. Defendants now renew that motion and join with it under Rule 29(b), 18 U.S.C.A., an alternative motion for a new trial.

The motion for an acquittal rests upon the single ground that the verdict was based only upon circumstantial evidence from which a reasonable hypothesis of innocence could be drawn. Since, according to defendants, the circumstantial evidence would support a finding of either innocence or guilt, defendants argue that an acquittal is required under United States v. Gasomiser Corp., D.C.D.Del. 1948, 7 F.R.D. 712. Gasomiser cannot be reconciled with the later decision of United States v. Giuliano, 3 Cir., 1959, 263 F.2d 582, 584. There, upon the basis of Holland v. United States, 1954, 348 U.S. 121, 139, 75 S.Ct. 127, 99 L.Ed. 150 and United States v. Allard, 3 Cir., 1957, 240 F.2d 840, 841, it was held that the evidence need not be inconsistent with every conclusion save that of guilt, provided it does establish a case from which the jury can find the defendant guilty beyond a reasonable doubt. Gasomiser has, therefore, been tacitly overruled.

■ Defendants concede that the circumstantial evidence reasonably supports a finding of guilt.[2] In view of this concession and the fact that the motion for acquittal is based solely upon an erroneous proposition of law, the Court might well deny the motion without further consideration. But the seriousness of the offense of which defendants were convicted—a felony—makes it desirable to examine the verdict in the light of the record.

■ The real question posed by a motion for an acquittal is whether all of the pieces of evidence against a defendant, taken together, make a strong enough case to let a jury find him guilty beyond a reasonable doubt. United States v. Allard, supra, 240 F.2d at page 841. A jury verdict must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it. Glasser v. United States, 1941, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680; United States v. Giuliano, supra, 263 F.2d at page 584. When the evidence is scrutinized in the light of this principle, it is apparent that the verdict has ample evidentiary support.

■ The indictment alleges that the taxpayers filed a return which stated that a tax of $218.00 was owing, whereas $2,956.84 was actually due. At the trial the government reduced the amount of the tax claim to $992.50.[3] To sustain a conviction it is not necessary for the Government to prove an evasion of all the tax charged. Tinkoff v. United States, 7 Cir., 1937, 86 F.2d 868, 878. The variance between the tax liability charged in the indictment and that proved at the trial is not fatal to the Government's case. A conviction may be sustained if a taxpayer willfully attempts to evade or defeat any

---

1. At the trial the parties stipulated that the tax period should be deemed to be from December 29, 1952 through December 27, 1953.

2. Defendant's main brief, p. 20:
"* * * All evidence introduced on the element of intent was purely circumstantial and could have supported two diametrically opposed hypotheses, guilt and innocence."

Defendant's main brief, p. 23:
"* * * the circumstantial evidence in the case under consideration here was susceptible to two reasonable hypothesis, guilt and innocence, * * * the evidence in this case supports two reasonable hypothesis, * * *".

3. At the trial the taxpayers admitted that $895.42 was the true amount of their liability.

substantial portion of the tax. Tinkoff v. United States, supra, 86 F.2d at page 878. The taxpayers admit that the return failed to disclose a substantial portion of the tax which was due. Accordingly, the only question to be determined is whether the evidence, viewed in the light most favorable to the Government, was sufficient to enable the jury to find beyond a reasonable doubt that the taxpayers willfully attempted to evade or defeat the tax.

Evidence was introduced which, if believed, established that the taxpayers together knowingly furnished their accountant, Torkelson, with false information which Torkelson, (apparently without knowledge of the falsity) used in preparing the tax return with the taxpayers' consent. The false information consisted of understatements of gross income and a false statement as to the tax paid when the taxpayers filed their declaration of estimated tax for 1953. Evidence was also introduced from which the jury could infer that the taxpayers overstated certain items of expense and altered certain of their records in efforts to conceal their true tax liability.

### Understatement of Gross Income

The taxpayers reported gross income of $42,691.90. Evidence was introduced which, if believed, established that the taxpayers actually had gross income of $51,734.17. The taxpayers now concede that their gross income exceeded $51,000. This large disparity between the actual and reported gross income is made up as follows:

(a) $4,749 of gross income shown on the taxpayers' books (prior to the alterations hereinbelow referred to) was not reported. The $4,749 was exactly equal to the amount which the taxpayers spent for capital assets during the year. The taxpayers now admit that their action was not proper. They testified that at the time when they eliminated the capital expenditures from their gross income, they did not know the difference between a capital expenditure and a business expense and that they thought they were doing the right thing. The evidence disclosed that the education of the taxpayers was limited and that neither was versed in the intricacies of the tax laws. Despite the taxpayers' lack of education and sophistication in tax matters, the jury could have concluded that no logical reason existed for the taxpayers' failure to report a part of their gross income simply because they had spent an equivalent amount for capital assets. Had the taxpayers reported the gross income disclosed by their records and overtly taken as a deduction the amount spent for capital assets, their action, even though wrong, would have been more understandable. The weakness of the explanation advanced by the taxpayers might well have weighed heavily against them in the consideration of the jury.

(b) $855.40 received from the sale of rye was not recorded on the records which the taxpayers kept of their receipts and was omitted from their reported gross income. The taxpayers say that this was an oversight. They point out that this was the only item of income which their records failed to reveal. But whether this item was deliberately or innocently omitted was for the jury to determine in the light of all of the evidence.

(c) $1,239.25 of rent received by the taxpayers was not reported. The return disclosed rental income of $975 whereas $2,214.25 had actually been received. The weekly sheets (in the nature of original books of entry) maintained by taxpayers for recording receipts and disbursements showed the true amount of the rentals. Since the tax returns did not, this was a circumstance for jury evaluation in determining whether the taxpayers had consciously understated their tax liability.

(d) The remainder of the disparity between the actual and reported gross income is substantially—if not entirely—due to the failure of the taxpayer to report any gross income from the operation of the Redden button factory. The fact

is not disputed that expenditures made by the taxpayers in connection with the button factory exceeded their gross income from the factory and that it would have been to their advantage to have reported both income and expenses, and to have offset the net loss of the factory against other taxable income. The taxpayers say that they understood that a tax was incurred only if a profit was made, and for this reason their return made no reference to the gross income or expenses of the button factory. It was not until after the close of the taxable year, however, that the taxpayers were in a position to know that the button factory would not be profitable. Despite this, the taxpayers failed to record substantial items of income from the button operation on the weekly records which the taxpayers kept as books of original entry. The jury could have concluded that the failure of the taxpayers to record these items of income was the result of a deliberate plan to evade or defeat their taxes; and that the failure of the taxpayers to report gross income from the button factory was in furtherance of this purpose.

### False Statement Re Taxes Previously Paid

The return stated that the taxpayers had previously made a tax payment of $70 in connection with their declaration of estimated tax for 1953. Torkelson included this statement in the return upon the basis of information which the taxpayers gave him. The fact is that no such payment had been made. This palpable falsehood not only bore directly upon the *bona fides* of the taxpayers in filing the return, but also was a circumstance which the jury could consider in weighing the credibility of the explanation advanced by the taxpayers for understating their taxable income.

### Overstated Items of Expense

The taxpayers kept what have been characterized as weekly sheets on which they recorded receipts and expenses at the time of or within a short time after the transactions. While these records were informal, they were tantamount to books of original entry. At the close of the year the taxpayers made what has been called a year-end summary consisting of the receipt and expense figures shown on the weekly statements segregated on the year-end summary under various headings such as "wages", "gas", "supplies", "receipts", etc. Each heading was totaled on the year-end summary. These totals were used in preparing the tax return. The Government made a comparison of the items shown on the weekly sheets with their counterpart figures on the year-end statement. This comparison disclosed that in 15 instances expense figures in the year-end statement were larger than in the weekly statement. The increases aggregated $650. In each instance the increase was in a round figure of either $10, $20, $30, $50 or $100. These increased expense figures were used in the preparation of the tax return and are reflected in the tax which was reported.

The defendants deny that the expense items were "raised". They testified that at the time when the figures on the weekly sheets were transposed to the year-end summary, they were reminded of additional items of business expenses which they had incurred but had failed to record in the weekly sheets, and that the increased amounts shown on the year-end statement simply reflected these additional expenses. The taxpayers did not identify the persons to whom these so-called expenses were paid or precisely for what they were incurred. This, together with the fact that the changes all consisted of round-figure increases, provided the jury with a reasonable basis for rejecting the taxpayers' explanation and for concluding that the expense figures were arbitrarily increased in order to reduce the tax.

### Alteration of Records

The evidence established that 15 items of income on the weekly sheets had been reduced after their original recording either by erasures or by covering the first

digit by a dollar mark. Each of the reductions was by an even $100 or more. These reductions aggregated $6,700. The taxpayers denied that they made the changes and disclaimed knowledge of how they had come about. A witness for the Government testified that the changes had been made prior to the time when the records were delivered to the Government in connection with its investigation. The jury was justified in inferring that the changes had been made by the taxpayers. The taxpayers assert, however, that the original and not the reduced figures on the weekly sheets were carried forward to the year-end summary and are reflected in the tax return which was made from the year-end summary. This is the fact. Nevertheless, the alterations provided a reasonable basis for the jury inferring that the reductions were made, prior to submitting the weekly statements to the Government for checking, in order to convince the Government that the income reported approximated that shown on the taxpayers' records, and hence that the taxpayers were conscious of an understatement of income when the return was filed.

In seeking to set aside the verdict the taxpayers point out that they failed to claim 57 items of expense aggregating $6,158.51 which under the law they were entitled to take. This omission, it is urged, is wholly inconsistent with a willful attempt to defeat or evade the tax.

Taxpayers further assert that if the taxable income which they reported is considered in relationship to the treatment which they accorded to the $4,749 of capital expenditures, it is apparent that the taxpayers did not deliberately understate their tax. The taxpayers concede that they should not have deducted the $4,749 from their income before reporting it, but assert that their error in so doing was the result of their failure to understand the distinction between an expenditure for a capital asset and a business expense. The taxpayers point out that if this single error be accepted as an innocent one and is tentatively permitted to stand for purposes of making a tax recomputation based upon all other adjustments to income and deductions which the Government claims must be made, the tax under such a recomputation would be less than the tax which was paid. This circumstance, taxpayers insist, forecloses a finding of guilt beyond a reasonable doubt.

The arguments which the defendants make have force. They were presented to the jury but apparently were deemed insufficient to overcome the counter arguments of the Government. It is not disputed that the taxpayers substantially understated their tax. Whether they did so innocently and as a result of lack of education and inexperience in matters of tax law, or in a deliberate endeavor to defeat or evade paying the tax, was a question within the peculiar competence of the jury to determine. The evidence previously detailed pertaining to understatement of income, overstatement of certain items of expense, falsification of statement as to tax previously paid, and alteration of records, all tended to support the Government's case. In the aggregate they had sufficient force to sustain the verdict beyond a reasonable doubt.

The alternative motion for a new trial is based upon the same ground as the motion for acquittal, plus the additional ground that the guilt of the defendants was not established beyond a reasonable doubt. The reasons for denying the motion for acquittal likewise require a denial of the motion for a new trial.

Let an order be submitted in accordance with this opinion.